Amber C. GIPSON, a Minor by and through her Next Friend and Mother, Deborah E. Gipson, Plaintiff-Respondent,

v.

TARGET STORES, INC., A Branch of Dayton-Hudson Corporation, Defendant-Appellant.

No. 43000.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 8, 1981.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 19, 1982.

Application to Transfer Denied April 13, 1982.

Geoffrey T. Farrow, Sunset Hills, for defendant-appellant.

Charles Mogab, St. Louis, for plaintiff-respondent.

WEIER, Judge.

On July 6, 1977, three year old Amber Gipson tripped over the "end cap" of a display fixture while in the Bridgeton, Missouri, Target Store with her mother. She sustained a deep gash to her right cheek with a resultant scar. The jury at trial found Target to be negligent and awarded damages in the amount of $5,000.

Target on appeal raises four points of error. It first contends that the trial court erred by allowing the store manager to be cross-examined with regard to a report which was privileged by the fact that it was prepared in anticipation of litigation. It next challenges the verdict-directing instruction as being an improper modification of MAI 22.03. Thirdly, it charges error in the failure of the trial court to grant a new trial because the amount of the verdict indicated that the jury was motivated by "passion and prejudice." It finally asserts that it should have been granted a remittitur or, alternatively, a new trial because the amount of the verdict was excessive as a matter of law. We affirm.

We first examine defendant's claim of trial error in the failure of the court to sustain an objection on the basis of privilege. John Sandstede was the manager of the Target Store on the date of the injury.

He was called as a witness by his employer and testified to the events that occurred subsequent to the accident. On direct examination he testified that Deborah Gipson, the mother of Amber, had told him that she had not seen Amber fall. This had followed testimony of Mrs. Gipson to the effect that she had seen Amber fall, and upon her cross-examination she testified she had not made any statement to the effect that she was looking away and had not actually seen the incident. On Sandstede's cross-examination it was brought out that as manager of the store he had certain responsibilities when an injury occurred to a customer, among them being the making of a report. No objection was made with regard to interrogation on the procedure used in filling out the report. He related that he filled out a form but there was no requirement at the time to take photographs. Interrogation with regard to the photographs brought forth an objection that it was irrelevant and the objection was overruled. When plaintiff's counsel requested that he see the report, the witness stated he did not have it. He did admit that it described details of what happened. He remembered the incident from memory but admitted he looked at the report the day before he testified. Further questions with regard to the report brought forth the objection that it was irrelevant. Then in discussion out of the hearing of the jury, counsel for defendant in support of his objection of relevancy informed the court that he didn't know whether it was an attempt to get insurance into the case but he couldn't see the relevancy of this line of questions concerning the necessity of refreshing the witness' memory. The court overruled this objection and informed counsel that he would let this interrogation proceed a little further. Plaintiff's counsel stated that he thought he had a right to challenge the memory of this witness on the facts and to see the report. It was at this time that counsel for defendant first raised the question of privilege. This was not done by objection but by a statement to the court: "I think this report would have been prepared in anticipation of litigation and would be privileged material

in any event and I don't see any—well—" The court overruled any objection and authorized further cross-examination. Interrogation was then had with regard to the making out of the report and the fact the witness had refreshed his memory from that report. The question was then asked as to whether there was anything in this report about what Mrs. Gipson had said on that particular occasion, to which the witness replied, "No, Sir." It was brought out that what he was telling the jury Deborah Gipson told him two and one-half years before was completely from memory rather than what he had put down in the report itself. Some other questions were asked and then the examination turned to the question of whether there was merchandise on the bottom shelf or base of the fixture at the time of the injury as was shown in the photographs. Further interrogation was had with regard to other facts that had been put down on the report before interrogation ceased. During this phase only one objection was made on the basis of relevancy.

 It is not completely clear as to what privilege counsel for defendant was asserting. All of the objections were apparently based upon relevancy except for the one statement made at the bench out of the hearing of the jury. Considerable testimony had gone in with respect to the report prior to counsel making this evaluation of the report. Even if we are to consider that this statement embodied an objection on the basis of the report being a privileged communication between attorney and client, the privilege had been waived. The objection of privilege must be raised at the first opportunity. Otherwise it is not timely and it is thereby waived. The proper time for objection is when the question calling for disclosure of privileged matters is asked and before it is answered. *Rock v. Keller*, 312 Mo. 458, 278 S.W. 759, 766[4] (1926). Here there was not only a failure to properly object in time but there was also a failure to positively assert disapproval on the basis of attorney-client privilege or request relief.

The second point on appeal concerns the giving of a verdict-directing instruction by the court at the request of plaintiff. The instruction as given was as follows:

"Your verdict must be for the plaintiff if you believe:

First, there was a three tier display fixture on the floor of defendant's store. That said lower tiers of said fixture projected out beyond the upper tier and if you find that said fixture was not reasonably safe for customers, and

Second, plaintiff did not know, and

Third, defendant knew or by using ordinary care could have known of this condition, and

Fourth, defendant failed to use ordinary care to remove it, and

Fifth, as a direct result of such failure, plaintiff was injured."

Defendant charges that this instruction fatally differs from MAI 22.03 so that it violates MAI Rule 70.02(e) which requires all modifications contain ultimate facts only and no evidentiary detail be included. MAI 22.03 is one of a number of verdict-directing instructions in the 22 series hypothesizing causes of action against owners and occupiers of land. As was stated in *O'Connell v. Roper Electric Company, Inc.*, 498 S.W.2d 847, 856 (Mo.App.1973) the 22 series indicate that the nature of the substance, defect or dangerous condition must be specified. In MAI 22.03 the first hypothetical paragraph submits a condition on the floor which causes a fall. This instruction is not limited to floor cases and with proper modification may be used in a number of situations. For instance in *Jackson v. Cherokee Drug Company*, 434 S.W.2d 257, 262 (Mo.App.1968), it was successfully used to hypothesize a defective door check which caused the door to close suddenly thereby injuring plaintiff. Although the modified MAI 22.03 there used described what made the door check unsafe, it was held to be a proper modification. Here the specification was of a three-tier display fixture located on the floor of defendant's store with the projection of a lower tier beyond the upper tier. We do not find that

there is such amplification of facts as to hypothesize evidentiary detail. Although inartfully drawn, it follows the pattern directed in *O'Connell, supra*, in specifying the nature of the substance, defect or dangerous condition. The ultimate test of the propriety of an instruction not in MAI is whether it follows substantive law and whether a jury, composed of ordinary people, can understand it. *Huff v. Union Electric Company*, 598 S.W.2d 503, 516[19] (Mo.App.1980).

The next attack on the instruction is directed to the failure to find that the "floor" was not reasonably safe for customers. The dangerous instrumentality here hypothesized is a fixture on the floor and not the floor itself. Although MAI 22.03 is designed for the classic slip and fall case, as indicated above, it may be modified for use in other instances where an owner or occupier of premises allows an instrumentality upon the premises to cause injury. *See Jackson v. Cherokee Drug Company, supra*.

Error is also claimed by defendant in the phrasing of the second paragraph of the above instruction which reads "plaintiff did not know." It is contended this is an improper variation of MAI 22.03 which reads: "Second, plaintiff did not know and by using ordinary care could not have known of this condition." This might be a fatal omission except that the plaintiff in this case was three years old at the time of the occurrence and was too young to be guilty of contributory negligence. *Vietmeier v. Voss*, 246 S.W.2d 785, 790[12] (Mo.1952). By hypothesizing absence of knowledge as a condition of recovery, plaintiff assumed a greater burden than necessary and no prejudice could have resulted from omitting the remainder of the second paragraph. *Wims v. Bi-State Development Agency*, 484 S.W.2d 323, 326[5] (Mo.banc 1972). Defendant's contentions directed to the verdict-directing instruction are denied.

The third point raised by defendant is that the trial court erred in failing to grant the defendant a new trial because the amount of the verdict indicated that the jury was motivated by passion and preju-

dice. It is well settled, however, that the size of the verdict, that is, that the verdict is excessive, does not in and of itself establish that it was the result of bias, or passion and prejudice. There must be a showing that there was some other error committed in the trial before the court will consider excessiveness as a ground to grant a party a new trial. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 615[21] (Mo.banc 1977). Such other errors to authorize the setting aside of the verdict for excessiveness are those that may appear in occurrences at the trial which caused the jury to ignore the evidence and the instructions. *Smith v. Whalen*, 613 S.W.2d 868, 871 (Mo.App.1981). Here the defendant has pointed to no incident which would have created prejudice against it in the minds of the jury. We rule this point against the defendant.

The final point advanced by the defendant is error on the part of the court in failing to grant a remittitur in a proper amount or in the alternative to order a new trial because the amount of the verdict was excessive as a matter of law. As has been stated: "There is no precise formula for determining whether a verdict is excessive; each case must be considered on its own facts. Consideration is given to the nature and extent of the injuries and the diminished earning capacity, economic conditions, plaintiff's age and a comparison of the compensation awarded and permitted in cases of comparable injuries." *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 309[18] (Mo.banc 1978).

■ Amber suffered a cut approximately one and one-half inches long on her right cheek near the cheekbone. She was taken to the emergency room at DePaul Hospital and received seven stitches to suture the wound. She was under the care of a plastic surgeon following the injury but no plastic surgery was performed. At the time of trial when she was six years old the scar on her cheek remained clearly visible. A jury had ample opportunity to view the scar on the face of the little girl and to see pictures taken of the wound and its progress after the injury. The award of $5,000 was not reduced by the judge following the trial. No cases have been presented to us which hold that such an award for like injuries is excessive and we have found none. If excessiveness of the verdict is urged and the trial court orders a remittitur, the appellate court regards the trial court's decision as so persuasive that the judgment will not ordinarily be disturbed on appeal except in a case which calls unmistakably for a greater reduction. The same deference is given to the action of the trial court where the plaintiff as appellant urges a restoration of a reduction in the verdict. The same deference should be a factor in the consideration of defendant's request for remittitur when the trial court has denied that request. *Ricketts v. Kansas City Stock Yards of Maine*, 537 S.W.2d 613, 621 (Mo.App.1976). We do not find that the trial court abused its discretion when it denied the request for remittitur.

The judgment is affirmed.

STEWART, P. J., and STEPHAN, J., concur.