Donald **SPARKS, Plaintiff-Respondent,**

v.

**CONSOLIDATED ALUMINUM CO.,
Defendant-Appellant.**

No. 47087.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 21, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1984.

Application to Transfer Denied
Nov. 20, 1984.

James F. Koester, St. Louis, for defendant-appellant.

Paul S. Brown, Brown, James & Rabbitt, P.C., St. Louis, for plaintiff-respondent.

GAERTNER, Presiding Judge.

A jury verdict for plaintiff in the amount of $300,000 in this action based upon strict liability in tort was reduced by a trial court remittitur to $200,000. Both plaintiff and defendant appeal. We affirm.

### DEFENDANT'S APPEAL

Defendant contends 1) plaintiff failed to make a submissible case in that the opinion testimony of plaintiff's expert witness was without foundation and therefore plaintiff failed to prove the product was defective, 2) the verdict was so excessive as to indicate bias and prejudice, 3) the trial court erred in permitting evidence of prior claims made against defendant, 4) the trial court erred by permitting jurors to feel the product many years after the accident, and 5) the evidence failed to support an instruction based upon defective manufacturing. Points one and five both relate to the sufficiency of the evidence and will be considered together. Our review is limited to a consideration of the evidence in the light most favorable to the plaintiff together with all reasonable inferences to

be drawn therefrom. *Garrett v. Joseph Schlitz Brewing Co.*, 631 S.W.2d 652, 654 (Mo.App.1982). We are required to accept plaintiff's evidence as true and to disregard defendant's evidence except in so far as it may aid plaintiff's case. *Braun v. General Motors Corp.*, 579 S.W.2d 766, 769 (Mo. App.1979).

Plaintiff testified that he was injured when using an extension ladder manufactured by defendant to paint his house. He placed the serrated polyethylene feet of the ladder four to four and one-half feet away from the side of the house on a clear, dry asphalt driveway. The top of the ladder rested against a windowsill twelve feet above ground. He climbed almost to the top of the ladder, high enough to reach the window. In this position, he testified, the feet of the ladder started to slip out from under him. He fell sustaining serious injuries.

The thrust of defendant's attack upon the submissibility of plaintiff's case is directed at the testimony of plaintiff's expert witness, John C. Georgian, a professor of mechanical engineering at Washington University. He expressed his opinion that the ladder was defectively designed because the hard plastic on the feet of the ladder had a low coefficient of friction. Defendant attacks this opinion as being without foundation in that Professor Georgian did not know the composition of the plastic and made no tests by which to determine the coefficient of friction but merely assumed it to be .3.

█ A cursory glance at one or two isolated answers of the witness would seem to lend credence to defendant's argument. However, when considering his testimony in its entirety, as we must [*Shelton v. Bruner*, 449 S.W.2d 673, 677 (Mo.App. 1969) ], it becomes evident that the professor's opinion was based not upon assumptions but upon mathematical calculations. He had been furnished plaintiff's deposition testimony detailing the placement of

the ladder and plaintiff's position thereon when it began to slip. By taking measurements at the scene of the accident he was able to diagram the position of the ladder against the house and to measure the angle between the base of the ladder and the asphalt driveway. Knowing plaintiff's weight and his height on the ladder, he could determine the force applied to this angle. Applying these known factors to a formula, a static force analysis, he calculated the unknown factor, the coefficient of friction.[1] Thus, he determined that with the measured angle of 65.7 degrees and plaintiff's weight of 170 pounds near the top of the ladder extended to 158 inches, by "calculating backwards, when it slipped the coefficient of friction must have been about .375." Similar calculations were made varying the angle and the height of the plaintiff on the ladder. Thus, Professor Georgian testified that with a .3 coefficient of friction, slippage would occur at a 72 degree angle. When asked how he determined the .3 coefficient, he replied "I just took it out of my head, made that assumption." This is the response seized upon by defendant as the principle basis of its attack upon the foundation of Professor Georgian's opinion. But when viewed in the light of his entire testimony, the answer may obviously be interpreted as describing a mental calculation rather than an unfounded assumption. Constrained as we are to view the evidence and the reasonable inferences to be drawn therefrom in the light most supportive of the verdict, and to resolve inconsistencies in favor of the prevailing party, *Lauber v. Buck*, 615 S.W.2d 89, 91 (Mo.App.1981), we consider Professor Georgian's answer to be a rather imprecise means of stating that he determined by mathematical calculation the one unknown factor necessarily derived from the known factors assumed in his hypothesis. That he reached his conclusion by calculation rather than by actual testing similar to that performed by defendant's experts in

1. Professor Georgian testified by deposition. His calculations were preserved on a three-page document which was marked as a deposition exhibit, but which was not introduced at trial nor filed with this court.

reaching a different conclusion is a distinction to be evaluated by the fact-finders in assessing the weight of the evidence. It does not affect its admissibility nor, if believed by the jury, its substantiality. Defendant's challenges to the submissibility of plaintiff's case, the verdict directing instruction and to the opinion testimony of Professor Georgian are denied.

■ The ladder was marked as an exhibit and introduced in evidence. Plaintiff's attorney requested permission for the jurors to run their fingers over the plastic feet of the ladder. Defendant's attorney objected on the grounds that the passage of five years since the accident rendered the present condition of the plastic irrelevant. The overruling of this objection is assigned as error. We disagree. Examination of exhibits introduced in evidence is within the sound discretion of the trial court. *Wilkens v. Cash Register Service Co.*, 518 S.W.2d 736, 747 (Mo.App.1975); *Yeager v. Wittels*, 517 S.W.2d 457, 466 (Mo.App.1974). There was no evidence that the ladder, which was bent during plaintiff's fall, was used after that time, or that its condition had changed. We find no abuse of discretion in permitting jurors to feel the serrations, or teeth, molded into the plastic in order to increase its resistance to slippage.

Defendant also claims error in the admission of evidence regarding other claims made against defendant of injuries by reason of slipping ladders. In response to an interrogatory defendant had disclosed seven claims made against it involving allegedly defective ladders. The time and circumstances of each claim were not requested nor disclosed. In a deposition of defendant's engineering manager, Mr. Cooke, plaintiff's attorney had questioned him relative to such claims. Before trial, by motion in limine, defendant's attorney sought an order excluding this evidence. The trial court sustained the motion as to the interrogatory answer but indicated that plaintiff's attorney would be permitted to read Cooke's testimony concerning the claims to the jury. Cooke was called as a witness as a part of plaintiff's case. He was questioned by plaintiff's attorney regarding claims made against defendant in which it was alleged that ladders with plastic feet had slipped. No objection was made to this interrogation. Later, plaintiff's attorney read Cooke's deposition testimony relating to this subject. Again, no objection was made.

■ In view of the absence of objection to this testimony when offered, we need not address the questions of the relevance or the similarity of conditions of the other claims. We have repeatedly advised counsel that the ruling on a motion in limine is interlocutory and presents nothing for appellate review unless preserved by timely objection during trial when the evidence is offered. Our opinion in *Robbins v. Jewish Hospital of St. Louis*, 663 S.W.2d 341, 348 (Mo.App.1983) contains an extended discussion of the rationale underlying this rule which we shall not repeat here. Point denied.

■ Defendant next contends the verdict was so grossly excessive as to indicate bias and prejudice on the part of the jury. It is well settled that the size of the verdict does not in and of itself establish that it was the result of bias or passion and prejudice. *Gipson v. Target Stores, Inc.*, 630 S.W.2d 107, 111 (Mo.App.1981). There must also be some showing of occurrences during the trial which would cause the jury to ignore the evidence and the instructions. *Id.* Conscious of this rule, defendant points to the evidentiary matters discussed above and argues that the examination of the ladder by the jury and the evidence of other claims created such bias and prejudice. We find nothing of an inflammatory nature in permitting jurors to examine closely an item of physical evidence such as a ladder. As to the prior claims, defendant's failure to object at trial precludes his complaint here. Moreover, we think it highly improbable that the testimony of seven claims against a company that manufactured two million ladders is so consequential "as to stir the emotions of the jury to a paroxysm of passion, bias or prejudice

and thus corrupt its verdicts." *McGowan v. Hoffman*, 609 S.W.2d 160, 166 (Mo.App. 1980).

The trial court, although sustaining defendant's motion to reduce the amount of the verdict to the amount prayed for in plaintiff's petition, did not grant a further remittitur in response to a request for such relief in defendant's motion for new trial. The trial court also impliedly overruled the assignment in the motion for new trial that the verdict was so grossly excessive as to indicate it was based upon bias and prejudice of the jury. We see no reason not to defer to the discretion and better vantage of the trial court in passing upon this issue. Point denied.

## PLAINTIFF'S APPEAL

On his cross-appeal plaintiff contends 1) the court abused its discretion in denying his motion to amend the prayer of his petition, 2) the court erred in ordering a remittitur and 3) the court erred in directing a verdict in favor of defendant on the issue of punitive damages.

Plaintiff's second amended petition praying for actual damages in the sum of $200,000 and punitive damages in the sum of $5,000,000 was filed on October 13, 1981. The trial on this petition commenced on January 10, 1983. After five days of trial, during the instruction conference, and after the trial court had sustained defendant's motion for directed verdict as to punitive damages, plaintiff sought leave to amend his petition by increasing his prayer for actual damages from $200,000 to $300,000. This was denied.

Amendment of a pleading to alter the prayer for damages after a trial has commenced is a matter within the discretion of the trial court and the ruling will not be overturned on appeal unless this discretion is clearly abused. *Jordan v. Robert Half Personnel*, 615 S.W.2d 574, 580 (Mo.App.1981). Plaintiff does not dispute the validity of this rule but argues that since defendant failed to show that it would be prejudiced by the amendment, the liberality in granting leave to amend when justice so requires as set forth in Rule 55.33(a), renders the denial of his motion for leave to amend an abuse of discretion. The liberality envisioned by the rule does not mean the trial court may ignore the notice which pleadings furnish to the adversary and the affect which pleadings have upon the conduct of the adversary's case. *Id.* at 580, citing *Harris v. Associated Dry Goods Corp.*, 612 S.W.2d 389, 391 (Mo.App.1981). Plaintiff has not referred us to a single case, nor has independent research discovered a case, where the discretionary denial of a motion for leave to amend the prayer of a petition made after the commencement of a trial has been found on appeal to constitute an abuse of discretion. *Prewitt v. Continental Insurance Co.*, 538 S.W.2d 902 (Mo.App.1976) does not, strictly speaking, involve an exercise of discretion. In *Prewitt*, a jury-waived trial, plaintiff introduced evidence of fixed dollar amounts of property damage without objection even though they exceeded the amounts pleaded and prayed for in the petition. In remanding for a new trial on other grounds, we observed that the denial of plaintiff's motion for leave to amend to conform to the evidence was an abuse of discretion. This observation was predicated upon the fact that all of plaintiff's claimed damages were expressed in fixed dollar amounts and, as was noted in *Harris v. Associated Dry Goods Corp.*, 612 S.W.2d at 390, the defendants could have protected themselves by objecting to the evidence when offered as it was beyond the scope of the pleadings. Failure to do so resulted in an automatic amendment of the pleadings to conform to the evidence and the issues tried by consent. Rule 55.33(b). The instant case, where the damages involved intangibles such as pain and suffering, is analogous to *Harris* and inapposite to *Prewitt*. The fact that defendant here failed to demonstrate prejudice, standing alone, is not sufficient to convict the trial court of an abuse of discretion.

Plaintiff's contention that the trial court erred in directing a verdict upon the issue of punitive damages is likewise with-

out merit. Plaintiff correctly asserts that punitive damages are recoverable in a strict liability case, provided, however, that plaintiff must present evidence that the defendant not only placed in commerce an unreasonably dangerous product, but that in so doing defendant's conduct showed a complete indifference to or conscious disregard for the safety of others. *Racer v. Utterman*, 629 S.W.2d 387, 396–97 (Mo. App.1981). As we have noted, the submissibility of plaintiff's case was based upon a mathematical calculation that, in hindsight, established a coefficient of friction Professor Georgian concluded to be a design defect. This suffices to make a case under the strict liability theory which requires no more proof than that defendant placed an unreasonably dangerous product into the stream of commerce. For this purpose fault is not an issue. It becomes an issue, however, on which plaintiff has the burden of proof, when punitive damages are sought. *Id.* Thus, plaintiff was required to prove that defendant knew of the danger in using polyethylene feet on its ladders and nevertheless marketed the product with indifference to or conscious disregard for the safety of others. This plaintiff failed to do.

Plaintiff points to the admission by Mr. Cooke, defendant's engineering manager, that he knew polyethylene had a lower coefficient of friction than rubber. But Cooke also testified, as a part of plaintiff's case, that testing of the polyethylene feet as fabricated with serrations proved it to have a greater coefficient than rubber. He further testified that the ladders with molded polyethylene feet were tested and certified by Underwriters Laboratories and that they met the standards of the American National Standards Institute. In view of all this, Cooke's admission that there might have been a better substance than polyethylene does not display indifference to or disregard for safety.

Plaintiff also points to Cooke's testimony about claims made of slipping ladders causing injuries. We have previously noted defendant's failure to object to this evidence when offered. The fact is the testimony regarding claims was extremely vague. No similarity between plaintiff's description of the circumstances of his accident and these other claims was developed. The time of the other claims was not established. It was not shown how many other claims involved the same model ladder, whether the feet were composed of polyethylene or of vinyl or of thermoplastic rubber, other substances used by defendant at various times. Finally, it was never established that any of the other claims were proven to have merit. The relevancy of such evidence is, at best, open to question. *See Keller v. International Harvester Corp.*, 648 S.W.2d 584, 589 (Mo.App. 1983). Such meager evidence hardly demonstrates indifference or disregard of safety. The trial court did not err in refusing to submit the issue of punitive damages to the jury.

Finally, plaintiff assigns as error remittitur of $100,000 ordered by the trial court. Rule 78.10 now permits a plaintiff who has consented to remittitur as a condition of a denial of new trial to appeal that the amount of the verdict was proper provided the appellate process has been initiated by the other party. However, a jury verdict which exceeds the amount claimed in a party's petition is deemed excessive, and, in the absence of indications that the excessiveness was predicated upon juror bias, prejudice, or misconduct, may be corrected by remittitur. *C & M Developers, Inc. v. Berbiglia*, 585 S.W.2d 176, 186 (Mo.App.1979); *Acy v. Inland Security Co.*, 287 S.W.2d 347, 353 (Mo.App.1956). We find no abuse of discretion.

The judgment of the trial court is, in all respects, affirmed.

SMITH and STEPHAN, JJ., concur.