Gary L. THARP, d/b/a T & T Interiors, Plaintiff/Appellant/Cross–Respondent,

v.

KEETER/SCHAEFER INVESTMENTS, L.P., a Georgia limited partnership, Defendant/Respondent/Cross–Appellant,

Tri–Lakes Construction & Plastering, Inc., a Missouri corporation, Intervenor/Respondent.

Nos. 20806, 20827.

Missouri Court of Appeals, Southern District, Division Two.

March 21, 1997.

Motion for Rehearing and Transfer to Supreme Court Denied April 14, 1997.

Application to Transfer Denied May 27, 1997.

Craig A. Smith, Daniel, Clampett, Powell & Cunningham, Springfield, for Plaintiff/Appellant/Cross–Respondent.

Phillip G. Greenfield Rouse, Hendricks, German, May & Shank, P.C., Kansas City, for Defendant/Respondent/Cross–Appellant.

Bob Lawson, Jr., Ellis & Ellis, P.C., Springfield, for Intervenor/Respondent.

CROW, Presiding Judge.

This is a mechanic's lien case. The parties are:

Gary L. Tharp ("Plaintiff"), a "metal stud and drywall contractor" doing business as T & T Interiors.

Tri–Lakes Construction & Plastering, Inc. ("Intervenor"), a Missouri corporation.

Keeter/Schaefer Investments, L.P. ("Defendant"), a Georgia limited partnership.

\*    \*    \*

The litigation is about work done by Plaintiff and Intervenor during construction of the

Holiday Inn Crowne Plaza ("Crowne Plaza") in Branson. At all times pertinent herein, the Crowne Plaza was owned by Defendant.

Two non-parties—a Missouri corporation and an individual—played roles in the events from which this suit arose.

The corporation is identified in Defendant's amended answer as "Seventy Six Music Country Inn, Inc." We henceforth refer to it as "Seventy Six." Seventy Six does business as "Keeter Schaefer Construction" and "K & S Construction."

The individual is Thomas Wayne Schaefer ("Schaefer"). He is a shareholder in, a director of, and president of, Seventy Six. He is also one of the five limited partners in Defendant.[1]

On May 18, 1993, Plaintiff signed a contract with "76 Music Country Inn, Inc." to supply and install sheetrock, steel studs and exterior finishes on the Crowne Plaza. Schaefer signed the contract for 76 Music Country Inn, Inc. as president.

Asked about the "role" of Seventy Six (d/b/a K & S Construction), Schaefer testified Seventy Six "[b]uilt the Crowne Plaza project." His testimony continued:

"Q Had it conducted other construction projects for your corporation?

A Yes, it had.

Q Okay. Is it still in business as a construction corporation?

A It's only active when we have a project.

. . . .

Q Okay. Is K & S involved in the general construction business for persons other than yourself?

A No.

Q Okay. K & S would be a construction company which would be activated for construction for your corporation's purposes, is that correct?

A Correct.

. . . .

Q [T]ell me how the money would flow from [Defendant] over to [K & S Construction] so that there would be funds to write checks for the workers on the Crowne Plaza project?

A Keeter/Schaefer Investments would basically do a draw request to our bank. It was Continental Bank of Illinois at the time, and they would wire the funds into Keeter/Schaefer Investments, and we would transfer those funds into K & S Construction and write the checks out of K & S Construction."

This suit began when Plaintiff filed a two-count petition against Defendant. Count I pled, *inter alia*, that the contract between Plaintiff and Seventy Six called for Plaintiff to be paid $1,232,815 for the labor and material required by the contract, that during the project additional labor and material were approved in the amount of $117,770, that Plaintiff had completed all of the contract work and the additional work, and that he was owed $110,058.50. Count I prayed for judgment in that sum against Defendant and for enforcement of a mechanic's lien in that sum on the Crowne Plaza.[2]

After Plaintiff filed suit, Intervenor entered the case and filed a three-count "cross-claim" against Plaintiff and Defendant. Count I pled, *inter alia*, that at Plaintiff's request, Intervenor furnished labor and material in constructing the Crowne Plaza, and that Plaintiff owed Intervenor $26,052.09. Count I prayed for judgment against Plain-

---

1. Schaefer identified the general partner in Defendant as "Keeter/Schaefer Corp.," a Georgia corporation. Schaefer disclosed he is a shareholder in, a director of, and president of, that corporation. As we fathom Schaefer's testimony, the other shareholders in that corporation are the same four individuals who are limited partners with Schaefer in Defendant.

2. As shall appear *infra*, no issue about Count II of Plaintiff's petition is presented in these appeals. Accordingly, its theory of recovery is immaterial.

tiff and Defendant in that sum and for a mechanic's lien in that sum on the Crowne Plaza.[3]

Defendant filed an amended counterclaim against Plaintiff. It pled, *inter alia*, that Plaintiff had been paid $1,244,878.50 for work performed under the contract with Seventy Six, that Defendant had paid Seventy Six the identical amount for the work performed by Plaintiff, that the amount to which Plaintiff was entitled was only $1,057,605.27 including "overhead and profit," and that Plaintiff had thus been "overpaid" $187,273.22 by Defendant. The counterclaim prayed for judgment in the latter amount against Plaintiff.

Following a non-jury trial, the court entered judgment: (1) awarding Plaintiff $110,058.50 from Defendant, with interest at nine percent per annum from July 2, 1994, together with a mechanic's lien on the Crowne Plaza; (2) denying Defendant's amended counterclaim; (3) awarding Intervenor $20,513.30 from Plaintiff (but nothing from Defendant), with interest at nine percent per annum from April 23, 1994; (4) denying Intervenor's prayer for a mechanic's lien; (5) denying Plaintiff's Count II; (6) denying Intervenor's Counts II and III.

Defendant brings appeal 20806 from that judgment; Plaintiff brings appeal 20827.

We address the appeals separately, starting with 20806. The first of Defendant's four points relied on is:

"The trial court erred in granting a personal judgment against [Defendant] on Count I of the petition because [Plaintiff] did not have a contract with [Defendant] in that [Plaintiff's] contract was with K & S,[4] the general contractor, and a personal judgment may not be entered against the landowner in an action to enforce a mechanic's lien absent a direct contractual relationship with the subcontractor."

In support of the point, Defendant cites the following passage from *Kelderman v. Compton*, 740 S.W.2d 391, 392 (Mo.App. E.D. 1987): "It is clear that a trial court cannot enter a personal judgment against a landowner in a mechanic's lien action, except where there is a direct contract with that landowner."

Plaintiff argues that the above-quoted passage is dictum. As shall appear *infra*, it is unnecessary to decide whether it is.

In response to Defendant's first point, Plaintiff asserts:

"The trial court did not err in entering a personal judgment against [Defendant] on Count I of the petition because the evidence supported the conclusion that K & S entered the contract with [Plaintiff] as the agent of [Defendant] in that the evidence presented demonstrated that Thomas Schaefer, who executed the contract with [Plaintiff] on behalf of K & S, was also a limited partner of [Defendant] and was president of the corporate general partner of [Defendant], K & S Properties,[5] and so acted with express or implied authority of [Defendant] for K & S, over whom [Defendant] exercised control."

Evidently anticipating Plaintiff's contention, Defendant asserts in its brief: "[Plaintiff] did not plead or argue that [Defendant]

---

3. As shall appear *infra*, no issue about Counts II and III of Intervenor's cross-claim is presented in these appeals. Accordingly, their theories of recovery are immaterial.

4. Defendant's reference to "K & S" is undoubtedly a reference to Seventy Six. To us, it seems confusing to refer to Seventy Six by one of its fictitious names (*see* § 417.200, RSMo 1994) instead of its true name. However, both Plaintiff and Defendant do so in their briefs. This opinion shall continue to refer to Seventy Six as Seventy Six, except where the opinion quotes the record or a brief.

5. As explained in footnote 1, *supra*, Schaefer identified the general partner in Defendant as "Keeter/Schaefer Corp.," a Georgia corporation. Plaintiff has apparently confused that corporation with another corporation (not yet mentioned in this opinion) about which Schaefer testified. That corporation was identified by Schaefer as "Keeter/Schaefer Properties, Inc.," a Missouri corporation. Schaefer disclosed he is a shareholder in, a director of, and an officer of, that corporation.

was the alter ego of K & S and therefore responsible for K & S' obligations."

In rejoinder, Plaintiff points out his petition pled that under his contract with Seventy Six, and "at the special insistence and request of [Defendant]," Plaintiff provided labor and material for the Crowne Plaza.

■ *S & R Builders and Suppliers, Inc. v. Marler,* 610 S.W.2d 690, 692[1] (Mo. App. E.D.1980), holds that the standard of appellate review of a court-tried mechanic's lien case is the standard in *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* Where, as here, a trial court makes no specific findings of fact, all fact issues are considered as having been found in accordance with the result reached, Rule 73.01(a)(3),[6] and the judgment must be affirmed under any reasonable theory supported by the evidence. *Siragusa v. Park,* 913 S.W.2d 915, 917[2] (Mo.App. W.D.1996).

■ We learn from *Wray v. Samuel U. Rodgers' Community Health Center, Inc.,* 901 S.W.2d 167, 170[3] (Mo.App. W.D.1995), cited by Plaintiff, that two elements are required to establish an agency relationship: (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf, and (2) the agent must be subject to the principal's control. Furthermore, *Wickes Lumber Co. v. Richmond Construction,* 690 S.W.2d 488, 490[2] (Mo.App. W.D. 1985), also cited by Plaintiff, explains that there is no particular method by which an agency relationship is established; it is necessary only that the credible facts, taken as a whole, fairly disclose that a party is acting for or is representing another by the latter's authority.

■ As we have seen, Schaefer admitted Seventy Six constructed projects for no one

but him, and is "active" only when he has a project. Schaefer also conceded that during construction of the Crowne Plaza, Defendant drew funds from its Illinois bank when money was needed to pay workers. According to Schaefer, "[W]e would transfer those funds into K & S Construction and write the checks out of K & S Construction." That Seventy Six was merely a conduit through which Defendant's funds were channeled to pay laborers and materialmen was confirmed by this segment of Schaefer's testimony:

"Q ... K & S Construction at one time was the vehicle through which all of these payments have been made for the Holiday Inn project?

A Correct."

Additionally, we note the record contains no contract between Defendant as owner and Seventy Six as general contractor on the Crowne Plaza project.

The trial court could have reasonably inferred that Defendant's transfer of funds to the account of Seventy Six was not because of any duty imposed on Defendant by a construction contract between Defendant as owner and Seventy Six as general contractor, but was instead because Seventy Six was merely an agent of Defendant in contracting with, and paying, laborers and materialmen in constructing the Crowne Plaza.

In holding the trial court could have reasonably reached that conclusion, we have not overlooked the cases cited by Defendant. They differ from the instant case because in them, there was a bona fide contractual relationship between an independent general contractor on the one hand and a property owner on the other.

We likewise have not ignored Defendant's argument that Plaintiff did not plead Seventy Six was Defendant's agent and did not litigate that theory at trial.

■ Under Rule 55.33(b), when issues not raised by the pleadings are tried by implied consent of the parties, they shall be

**6.** Rule references are to Missouri Rules of Civil Procedure (1996).

treated in all respects as if they had been raised in the pleadings. Failure to object to evidence on the ground that it is beyond the scope of the pleadings results in automatic amendment of the pleadings to conform to the evidence. *Sparks v. Consolidated Aluminum Co.,* 679 S.W.2d 348, 353[10] (Mo. App. E.D.1984). However, that rule is subject to the proviso that evidence creates an amendment of pleadings by implied consent only when such evidence bears solely on the proposed new issue and is not relevant to some other issue in the case. *Shelton v. Bollinger,* 885 S.W.2d 35, 36–37[6] (Mo.App. S.D.1994).

Schaefer's testimony about the channeling of Defendant's funds through Seventy Six to laborers and materialmen was received without objection. We fail to see how that testimony was relevant to any issue except whether Seventy Six was Defendant's agent in constructing the Crowne Plaza. Said another way, if Seventy Six was a general contractor who had a contract with Defendant to build the Crowne Plaza on Defendant's land, we fail to see how the method by which funds were transferred from Defendant to Seventy Six would have been relevant to any issue between Plaintiff and Defendant.

■ We therefore hold that Schaefer's testimony about the transfer of Defendant's funds into Seventy Six's account for the purpose of paying construction costs was relevant solely to the issue of whether Seventy Six was Defendant's agent. Consequently, to the extent, if any, that Plaintiff's Count I failed to plead Seventy Six was Defendant's agent, Count I was amended by the evidence to plead that theory.

Pursuing the agency theory, Plaintiff maintains that Defendant "waived any claim of lack of contractual privity by its presentation of evidence on its counterclaim for excess profits under the contract."

In its reply brief, Defendant attempts, but fails, to satisfactorily explain the theory of its amended counterclaim. As reported earlier, Defendant pled that Plaintiff had been paid $1,244,878.50 under the contract between Plaintiff and Seventy Six, that Defendant had paid Seventy Six the identical amount for work performed by Plaintiff, and that Plaintiff had been "overpaid" $187,273.22 *by Defendant.* Defendant presented evidence in support of that hypothesis and sought to recover the alleged overpayment *from Plaintiff.*

If one accepts Defendant's premise that Seventy Six was the general contractor and Plaintiff's contract was with Seventy Six, and if one further accepts Defendant's premise that Plaintiff was paid too much for the work he performed under that contract, it is obvious that the cause of action for the overpayment belonged to Seventy Six, not Defendant. Defendant neither pled nor proved that Seventy Six assigned that claim to Defendant.

Defendant's tactic in bringing the amended counterclaim against Plaintiff is consistent with the theory that Seventy Six, in making the contract with Plaintiff, was acting as agent of Defendant, not as an independent contractor who contracted with Defendant to build the Crowne Plaza.

■ A party is bound on appeal by the position such party took in the trial court. *State ex rel. State Highway Commission v. County of Camden,* 394 S.W.2d 71, 75[4] (Mo.App.1965); *Hildreth v. Key,* 341 S.W.2d 601, 613[24] (Mo.App.1960). Defendant's contention on appeal that it was not a party to the contract is contrary to Defendant's position at trial.

■ On the record here, we hold the trial court could have properly concluded that Seventy Six, in entering into the contract with Plaintiff, was acting as agent of Defendant, an undisclosed principal.[7] Where an agent does not disclose his agency, both the agent and principal are liable on the contract.

---

**7.** That Defendant was undisclosed is demonstrated by Plaintiff's testimony that in negotiating the contract he dealt with Joe Williams. Schaefer described Williams as a "contracted employee of K & S" at the time of the Crowne Plaza project.

*Fricke v. Valley Production Credit Association*, 721 S.W.2d 747, 755[5] (Mo.App. E.D. 1986).

Inasmuch as Defendant's first point is based on the proposition that Plaintiff did not have a contract with Defendant, and we have held the trial court could have properly found otherwise, it follows that Defendant's first point is without merit.

Defendant's second point is:

"The trial court erred in entering a judgment on Count I against [Defendant] enforcing a mechanic's lien because [Plaintiff] waived its [sic] right to file a mechanic's lien in that in exchange for the consideration of progress payments throughout the course of the project [Plaintiff] executed valid mechanic's lien waivers for the total amount of labor and materials provided to the property."

The contract contained this provision regarding payment:

"T & T[8] shall submit all invoices to Keeter[9] by the 25th of the month. Keeter shall remit the invoice amount, less 10% retainage, by the 10th of the following month."

As we understand the evidence, Plaintiff submitted invoices at periodic intervals based on the percentage of contract work he had completed plus additional work that had been ordered and finished. Each invoice showed the amount of "retainage" to be withheld from the payment.

Each time Plaintiff received a check in payment of an invoice, he also received a document characterized by the parties as a "lien waiver." The lien waiver provided, *inter alia*, that in consideration of the amount received, Plaintiff waived any rights he might have under chapter 429, RSMo, for materials provided and work performed up to and including a specified date for the Crowne Pla-

za, and that Plaintiff released any claim he might have against "Keeter/Schaefer Properties, Inc., Keeter Schaefer Corp. and/or K & S Construction."

Either Plaintiff or his office manager signed each lien waiver that accompanied a payment.

By March 24, 1994, Plaintiff's work was "complete." On that date he submitted an invoice to "K & S Construction Co." for payment of the "10% Retainage." The amount of the invoice was $135,058.50.

On May 17, 1994, Plaintiff signed a lien waiver in consideration of a payment of $26,478.50, ostensibly releasing any lien rights he might have for materials provided and work performed up to and including May 10, 1994. As we understand the evidence, the payment for which that lien waiver was signed was not a payment against the $135,058.50 retainage, but instead was a payment for an earlier invoice.

On July 2, 1994, Plaintiff received a $25,000 check from "K & S Construction," accompanied by a lien waiver. According to Plaintiff, the $25,000 payment left a balance of $110,058.50 owed him for retainage.

On July 7, 1994, Plaintiff's office manager signed the lien waiver that accompanied the $25,000 payment. The lien waiver is set forth below. The italics indicate handwriting.

*Partial*

WAIVER OF MECHANICS' LIEN

T & T INTERIORS, in consideration of *$25000.00*, paid on this date, the receipt of which is hereby acknowledged, hereby waives any rights that it might have under Chapter 429 of the Revised Statutes of the State of Missouri for materials provided and/or work performed up to and including

---

Plaintiff avowed Williams indicated he was "project manager" for "K & S Construction."

**8.** The first paragraph of the contact stated that Plaintiff would be referred to as "T & T."

**9.** The first paragraph of the contract stated that "76 Music Country Inn, Inc." does business as "Keeter Schaefer Construction" and would be referred to as "Keeter."

*Partial Retainage,* 1994 for the property known as HOLIDAY INN CROWNE PLAZA, Branson, Missouri, and releases any claim that it might have against Keeter/Schaefer Properties, Inc., Keeter Schaefer Corp. and/or K & S Construction on account of any materials provided and/or work performed on said property up to and including the aforesaid date, *to the extent of the $25,000.00 payment received.*

█ Defendant maintains that each lien waiver constituted a relinquishment of the right to a lien for all labor and materials furnished by Plaintiff up to and including the "operative date" of the waiver. Consequently, says Defendant, "[T]he fact that retention was held back from each progress payment does not impact the scope or effect of the waiver."

Defendant emphasizes that the lien waiver Plaintiff signed May 17, 1994, showed an operative date of May 10, 1994, which was after Plaintiff had completed all of his work. Therefore, reasons Defendant, on May 17, 1994, Plaintiff "expressly and unambiguously waived any remaining lien rights."

In determining whether Defendant's theory is meritorious, we begin by examining Defendant's contention in the trial court that Plaintiff was overpaid.

As reported earlier, Defendant pled Plaintiff had been paid $1,244,878.50. Plaintiff admitted that averment. Defendant further pled that Plaintiff's "total expenditures" on the Crowne Plaza project were $919,656.76.

At trial, Defendant presented evidence that the normal profit for work of the type performed by Plaintiff was ten percent of the cost of doing the work, hence the amount Plaintiff was to receive under the contract, together with the amount he was to receive for the additional work approved during the project, would give him an "excessive" profit. Defendant did not claim that Plaintiff failed to complete any work required of him or that he charged more for the work than the contract amount or the agreed amounts for the additional work.

Defendant's second point (quoted earlier) does not raise the excessive profit issue, nor does it aver Plaintiff left any work undone or that he charged more than the amount called for in the contract or the agreed amounts for the additional work. The second point's hypothesis that Plaintiff is not entitled to a mechanic's lien for the unpaid $110,058.50 retainage is based solely on the premise that by signing the lien waivers up to and including the one with the operative date of May 10, 1994 (which was after Plaintiff had completed all of his work), Plaintiff relinquished his right to a lien for the retainage.

In *P & K Heating and Air Conditioning, Inc. v. Tusten Townhomes Redevelopment Corp.,* 877 S.W.2d 121 (Mo.App. E.D.1994), the court said:

> "To be valid a lien waiver must be supported by consideration or must have induced the party receiving it to have detrimentally changed its position in reliance upon the waiver. Where a lien claimant has not received consideration, it may successfully assert the invalidity of a lien waiver if the owner or other interested person has not paid out money or otherwise changed its position to his detriment in reliance on the waiver."

*Id.* at 123[3] (citations omitted).

Defendant emphasizes that each lien waiver, including the one with the operative date of May 10, 1994, was supported by consideration. Furthermore, says Defendant, the lien waiver signed by Plaintiff's office manager on July 7, 1994 (set forth earlier), demonstrates that Plaintiff knew each lien waiver was a "total waiver" of the right to a lien for all material furnished and work performed up to and including the operative date of the waiver.

Defendant bases its argument on the handwritten words "Partial," "Partial Retainage," and "to the extent of the $25,000.00 payment received," placed on the July 7, 1994, waiver by Plaintiff's office manager. Defendant asserts: "[Plaintiff's] modification underscores the conclusion that by its prior total lien

waivers [he] extinguished any lien rights [he] had prior to the retention payment. The Trial Court erred as a matter of law in enforcing a lien for unpaid retention because [Plaintiff's] lien rights had been waived by prior Lien Waivers."

In response, Plaintiff maintains:

"The trial court did not err in entering a judgment on Count I against [Defendant] enforcing a mechanic's lien because the claimed waivers are invalid as to the retainage for want of consideration in that [Plaintiff] anticipated that the retainage would be paid as part of the consideration for the waivers for which the retainage was subtracted from the invoiced amounts as progress payments were made, and the retainage payment was never made."

The trial court could have reasonably found that each time Defendant (through its agent, Seventy Six) paid an invoice submitted by Plaintiff, Defendant understood it was paying only ninety percent of the amount Plaintiff had earned for the work shown on the invoice, and that the remaining ten percent would be due when all work was finished and accepted by Defendant. Furthermore, as we understand the evidence, each lien waiver showed only the amount of the payment Plaintiff received (ninety percent of the invoiced amount).

Thus, the question we must decide is whether Defendant can escape a mechanic's lien on its Crowne Plaza for the ten percent retainage due Plaintiff by exhibiting a series of lien waivers executed by Plaintiff for a consideration of ninety percent of the amount earned for the work invoiced during the project, where both parties understood the ten percent withheld on each invoice would be payable when the job was finished. That is, will lien waivers given in consideration of payment of ninety percent of the amount earned under a contract bar a lien for the remaining ten percent.

A case with facts analogous to, though not identical with, the instant case is *Giammarino v. J.W. Caldewey Const. Co., Inc.*, 72 S.W.2d 159 (Mo.App.1934). There, a subcontractor performed work under a contract with the general contractor. The contract price was $550. The general contractor gave the subcontractor a $250 check. The subcontractor signed a document waiving "any and all lien rights." The document showed the contract price, the payment, and the $300 balance. The check was dishonored by the drawee bank because of insufficient funds. The owners paid the general contractor $250 in reliance on the lien waiver. When the subcontractor sued to enforce a mechanic's lien for $550, the owners raised the lien waiver as a defense.

The appellate court affirmed a judgment awarding the subcontractor a lien for $300 plus accrued interest. The opinion explained that the lien waiver was ineffective for want of consideration except to the extent that the owners relied on it by paying the general contractor $250. *Id.* at 160.

In the instant case, there was no evidence that Defendant paid out any part of the retainage to anyone—except the $25,000 payment to Plaintiff on July 2, 1994—or that Defendant changed its position to its detriment in reliance on the lien waivers. The only reasonable inference from the record is that Defendant still has the $110,058.50 retainage in its pocket.

In *Herbert & Brooner Construction Co. v. Golden,* 499 S.W.2d 541 (Mo.App.1973), cited by Plaintiff, the arrangement was that as each phase of a construction project was completed, the general contractor submitted a certificate for payment to the architect, who approved payment and forwarded the certificate to the owner. Each certificate was accompanied by a lien waiver executed by the contractor which recited as a condition subsequent that the waiver would be without effect if payment for the work was not made. The owner paid every certificate approved by the architect except the final two, which represented ten percent retainage and final payment. Nonetheless, the contractor executed a lien waiver acknowledging receipt of the full amount due under the contract. The

contractor did so at the owner's request, because the institution financing the project required complete lien waivers as a condition of disbursing the proceeds of the permanent loan. Simultaneously, the owner gave the contractor a letter acknowledging that money was still due the contractor.

The trial court denied the contractor a lien for the unpaid amount. The appellate court held that was error, saying:

> "There can be no doubt that the consideration for which [the contractor] executed its waiver was the anticipation of payment of the remaining amounts due for construction, but not yet paid. Nor can the instrument of waiver reasonably be read to intend the relinquishment of lien absolutely in the absence of the promised payment. . . .
>
> The general lien waiver . . . was ineffective for want of consideration to support it and its invalidity may be successfully asserted by the [contractor] unless on principles of estoppel 'the owner or other person interested has . . . paid out money or otherwise changed his position to his detriment upon the waiver'."

*Id.* at 546.

The appellate court held the owner had not changed his position to his detriment in reliance on the waiver, hence the contractor was entitled to a mechanic's lien. *Id.* at 547.

We realize, as underscored by Defendant, that *Herbert & Brooner* differs from the instant case in that there was a "side letter" in that case from the owner acknowledging full payment had not been made. However, even though there is no such letter here, it is evident from the record that Defendant understood the consideration recited in each lien waiver was only ninety percent of the amount owed Plaintiff for the invoiced work. Furthermore, as observed earlier, there is no evidence that Defendant changed its position to its detriment in reliance on the waivers.

We therefore hold that *as between Plaintiff and Defendant,* the lien waivers executed by Plaintiff waived his right to a mechanic's lien for only the amounts shown on the waivers, not for the retainage shown on each invoice. The trial court properly enforced Plaintiff's mechanic's lien for the amount of the unpaid retainage, together with interest from July 2, 1994. Defendant's second point is denied.

In so holding, we point out there is no issue in these appeals about the priority of Plaintiff's lien in regard to such other liens, if any, as exist on the Crowne Plaza. The only other party in this case is Intervenor, and it has not appealed from the denial of its prayer for a mechanic's lien.

Defendant's two remaining points hinge on the premise that Plaintiff had no contract with Defendant. Inasmuch as we rejected that hypothesis in denying Defendant's first point, we deny Defendant's remaining points without further ado.

That brings us to appeal 20827.

Plaintiff attacks the portion of the judgment awarding Intervenor damages from him. Plaintiff maintains the uncontroverted evidence established Intervenor breached its agreement (as a subcontractor) with him to perform its work in a good and workmanlike manner, causing him to incur expenses in correcting Intervenor's work and cleaning up after Intervenor. Plaintiff insists he was entitled to "either an affirmative defense or setoff" against Intervenor or an award of damages from Intervenor.

Intervenor points out that its evidence contradicted some of Plaintiff's evidence about Intervenor's alleged derelictions, and that in any event the trial court was not required to believe Plaintiff's evidence.

■ In reviewing this court-tried case, we are mindful that credibility of witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part or all of the testimony of any witness. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988). On appeal in a court-tried case, an appellate

court defers to the trial court on factual issues because it is in a better position to not only judge the credibility of witnesses directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455[9] (Mo. banc 1984). The appellate court assumes the trial court believed the testimony consistent with its judgment. *Matthews v. Moore*, 911 S.W.2d 664, 668[3] (Mo.App. S.D.1995).

Applying those principles, we hold the portion of the judgment awarding Intervenor damages from Plaintiff on Intervenor's cross-claim is supported by substantial evidence and is not against the weight of the evidence, that no error of law appears, and that an opinion on that facet of the case would have no precedential value. Accordingly, the award of damages in favor of Intervenor against Plaintiff is affirmed in compliance with Rule 84.16(b)(1) and (5).

Judgment affirmed.

MONTGOMERY, C.J., and SHRUM, J., concur.