**In re the MARRIAGE OF Lisa Gaye HEIRIGS and Dennis Wayne Heirigs.**

**Lisa Gaye Heirigs, Appellant,**

v.

**Dennis Wayne Heirigs, Respondent.**

No. 23522.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 18, 2000.

836

Christopher A. Hazelrigg, Hazelrigg &
Roberts, P.C., Springfield, for appellant.

Greggory D. Groves, Lowther, Johnson,
Joyner, Lowther, Cully & Housley, L.L.C.,
Springfield, for respondent.

CROW, Judge.

Lisa Gaye Heirigs appeals from a judgment dissolving her marriage to Dennis Wayne Heirigs. The first of her two points relied on avers the trial court incorrectly classified a "mobile home"—purchased during the marriage—as Dennis's[1] separate property. Lisa's second point maintains the trial court wrongly concluded she had only a "minor marital interest" in Dennis's "separate farm property" on which the "mobile home" sits.

The parties married December 26, 1987. Three years earlier, Dennis had acquired sole ownership of a 164–acre tract.[2] At trial, the parties referred to it as "the farm." So shall this opinion.

When the parties married, an "older farm home" was situated on the farm. In 1995, the parties "tore it down with a bulldozer and hauled it off."

Thereafter, according to Lisa, the parties "had a new house erected." Her testimony:

"Q. And what does that house consist of?

A. As far as rooms you mean, or—

Q. Well, as far as what is it, and is it—

A. A modular house with an attached garage, and a porch—front porch built on to it? [sic]

Q. Okay. Is it on a foundation?

A. Yes.

Q. Is it permanently attached to the real estate?

A. Yes.

Q. And, of course, the garage has been added on, and it's permanently attached and—

A. Yes.

Q. Okay. When was that added on?

A. 1995.

Q. Do you have a judgment about how much was spent on that improvement?

A. Total, about 50,000 for everything—house, garage, porch."

Asked how she and Dennis paid for those improvements, Lisa explained approximately $15,000 to $18,000 came from savings accumulated "mostly" from her wages. The rest was borrowed from Dennis's parents and a bank.

In an "Amended Statement of Marital and Non-marital Property and Liabilities," received in evidence at trial as Petitioner's Exhibit 5, Lisa listed—as marital property—one parcel of real estate described as:

"160 acres with modular house, attached garage, dairy barn, covered lot, calf barn, 3 hay barns, 2 silos, 3 grain bins, loafing barn[.]"

According to Exhibit 5, the property had a present fair market value of $195,000, but was subject to an "Amount Owed" of $110,000, leaving "Equity" of $85,000.

For convenience, this opinion, in referring to the residence placed on the farm in 1995, shall use the term in Lisa's testimony (quoted supra) and her Exhibit 5 (above), i.e., "modular house."

Dennis, like Lisa, presented an "Amended Statement of Marital and Non-marital Property and Liabilities." It was received in evidence as Respondent's Exhibit U. It listed no real estate as marital property. Among a multitude of items of Dennis's nonmarital property, Exhibit U listed:

"160 acres w/buildings existing prior to marriage[.]"

---

1. For brevity and clarity, this opinion refers to the litigants by their respective forenames. No disrespect is intended.

2. The parties' briefs refer to the tract as a "160 acre farm." A report prepared by an appraiser who testified for Lisa shows the tract comprises 164 acres. A report prepared by an appraiser who testified for Dennis also shows the tract comprises 164 acres. Dennis and an earlier wife, Vicky, bought the tract in 1977. In conjunction with the dissolution of that marriage, Vicky executed a quitclaim deed to Dennis December 20, 1984.

According to Exhibit U, the property had a present value of $168,000, but was subject to an "Amount Owed" of $144,000, leaving "Equity" of $24,000.

The judgment set apart to Lisa and Dennis, respectively, numerous items of nonmarital property; the judgment also divided a multitude of items of marital property. Among the findings in the judgment are these:

"The real property consisting of a 160 acre farm . . . is primarily the separate property of [Dennis] that does contain a minor marital component.

In order to effect an equitable division of the property and debts, [Dennis] should pay [Lisa] the sum of $20,000.00."

The judgment awarded the farm to Dennis as nonmarital property and granted Lisa a $20,000 judgment against him, said amount "to be a Judgment lien on [Dennis's] real property unless and until discharged."

■ The modular house was not separately mentioned in the judgment. This court infers the trial court found the modular house is a fixture. As explained in *Marsh v. Spradling,* 537 S.W.2d 402, 404[1] (Mo.1976), a fixture is an article of personal property which has been so annexed to the real estate that it is regarded as part of the land. It is evident from the parties' briefs that they interpret the judgment that way.

Lisa's first point relied on:

"The Trial Court erred in determining the separate and marital property of [Lisa] and [Dennis] because the Court erroneously declared and applied the law in that it incorrectly classified the mobile home as the separate real property of husband, when in fact the mobile home was marital personal property which was purchased during the marriage with entirely marital funds."

It is obvious from the argument beneath the point that the "mobile home" referred to in the point is the modular house placed on the farm in 1995.

Lisa asserts: "In Missouri, mobile homes are conveyed by title, just like automobiles or boats, with evidence of title issued by the Department of Revenue."

This court infers Lisa is referring to § 700.320.1, RSMo 1994, which provides that the owner of any new or used manufactured home, as defined in § 700.010,[3] shall make application to the Director of Revenue for an official certificate of title to such manufactured home in the manner prescribed by law for acquisition of certificates of title to motor vehicles and the rules promulgated pursuant thereto.

Lisa also asserts: "Creditors with an interest in a mobile home obtain and perfect security interests, not by a formal recording with the recorder of deeds, but by having their interest denoted on the title." In support of that assertion, Lisa cites § 700.350, RSMo 1994, which governs the procedure for perfecting a lien or encumbrance on a manufactured home by applying for a certificate of ownership displaying the name and address of the lienholder and the date of the security agreement.

Lisa also directs this court to § 137.115, RSMo 1994, subsections 6, 7 and 8 of which provide for property tax assessment of manufactured homes as defined in

3. Section 700.010(5), RSMo 1994, defines a manufactured home. It reads:

" 'Manufactured home', a factory-built structure or structures which, in the traveling mode, is eight body feet or more in width or forty body feet or more in length, or, when erected on site, contains three hundred twenty or more square feet, equipped with the necessary service connections and made so as to be readily movable as a unit or units on its or their own running gear and designed to be used as a dwelling unit or units with or without a permanent foundation. The phrase 'without a permanent foundation' indicates that the support system is constructed with the intent that the manufactured home placed thereon may be moved from time to time at the convenience of the owner[.]' "

§ 700.010. Subsection 6 of § 137.115 provides that a manufactured home located in a rental park, rental community or on real estate not owned by the manufactured home owner shall be considered personal property. However, subsection 6 continues: "A manufactured home located on real estate owned by the manufactured home owner may be considered real property."

Missouri appellate courts have affirmed judgments holding mobile homes became part of the real estate on which they were situated: *Cattoor v. Wells*, 641 S.W.2d 492 (Mo.App. E.D.1982); *City of Festus v. Festus Flying Service, Inc.*, 750 S.W.2d 532 (Mo.App. E.D.1988). Missouri appellate courts have also affirmed judgments holding mobile homes did not become part of the real estate on which they were situated: *In re the Estate of Horton*, 606 S.W.2d 792 (Mo.App. S.D.1980); *In the Estate of Parker*, 25 S.W.3d 611 (Mo.App. W.D. 2000).

■ This opinion need not analyze those cases or attempt to determine how they might apply here. That is because, as henceforth explained, this court holds Lisa is barred from complaining in her first point that the trial court erred in classifying the modular house as real estate instead of personal property.

Subsections 7 and 8 of § 137.115, RSMo 1994, provide for assessment of a manufactured home that "has been converted to real property in compliance with section 700.111." Section 700.111, RSMo 1994, reads:

"1. The owner of a manufactured home may convert the manufactured home to real property by:

(1) Attaching the manufactured home to a permanent foundation situated on real estate owned by the manufactured home owner; and

(2) The removal or modification of the transporting apparatus including but not limited to wheels, axles and hitches rendering it impractical to reconvert the real property thus created to a manufactured home.

. . . ."

Here, the modular house was placed on real estate owned by Dennis, one of the purchasers of the modular house. The report of Lisa's appraiser (mentioned in footnote 2, *supra*) describes the modular house thus:

"The house is a newer style modular home, has a permanent block foundation, metal double hung windows, aluminum storm windows, vinyl siding, composition roof, has a 12' × 20' CCA deck, has an exterior wood furnace, and has forced air heat and cooling. The house has 3 br, 2 baths, lr, kitchen, dining room, utility room, has stained woodwork, has hollow core doors, has a metal fireplace, wood cabinetry, vaulted lr ceiling, skylight, and a fiberglass garden tub. There is a 2 car garage attached and the structure is taxed as attached to the real estate."

There was no evidence that Lisa or Dennis ever protested the taxation of the modular house as part of the real estate.

Two photographs of the modular house are included in the report of Lisa's appraiser. The photographs are attached at the end of this opinion. The photographs show guttering from the roof to the ground and a paved parking area abutting the garage entrance. Another photograph in the record—not attached to this opinion—shows what appears to be a paved walkway from the parking area to the porch steps. The trial court could have reasonably inferred from those photographs that the parties, in annexing the modular house to the land, intended to convert the modular house to real estate.

Furthermore, Exhibit 7, presented to the trial court by Lisa, consisted of "nine vehicle titles and a renewal application for a tenth vehicle." No certificate of title to the modular house—or application therefor—appeared in Exhibit 7. From those circumstances, the trial court could have

reasonably assumed (a) the parties had no certificate of title to the modular house, and (b) the lack of a title certificate indicated the parties, in placing the modular house on the farm, intended to convert the modular house to real estate, thereby eliminating any future need for a title certificate.

Finally, as noted earlier, Exhibit 5, presented to the trial court by Lisa, listed—as marital real estate—one parcel described as "160 acres with modular house. . . ." The modular house is listed nowhere else in Exhibit 5. Consequently, the trial court could have reasonably concluded Lisa considered the modular house to be part of the land, not personal property.

■ A party is bound on appeal by the position such party took in the trial court. *Tharp v. Keeter/Schaefer Investments, L.P.*, 943 S.W.2d 811, 816[9] (Mo. App. S.D.1997). A party cannot lead a trial court into error and then employ the error as a source of complaint on appeal. *In re the Marriage of Perkel*, 963 S.W.2d 445, 452[14] (Mo.App. S.D.1998). Having treated the modular house as if it was part of the real estate at trial, Lisa cannot now, in this appeal, claim the trial court erred in failing to classify the modular house as personal property.[4]

However, that does not mean Lisa is foreclosed from protesting the trial court's disposition of the property. Under § 452.330.2(5), RSMo Cum.Supp.1998, any increase in the value of Dennis's farm during the marriage attributable to contribution of marital assets, including labor, constitutes marital property, but only to the extent of such contributions. *In re the Marriage of Spence*, 943 S.W.2d 373, 375–76[1] (Mo.App. S.D.1997); *Deffenbaugh v. Deffenbaugh*, 877 S.W.2d 186, 188[2] (Mo. App. E.D.1994). The modular house is indisputably a marital asset, as it was bought jointly by the parties during the marriage. § 452.330.2, RSMo Cum.Supp.

1998. *Cf. Armstrong v. Armstrong*, 654 S.W.2d 302, 302[1] (Mo.App. E.D.1983).

■ That brings this court to Lisa's second point, which reads:

"The Trial Court erred in determining the division of the marital and separate property between [Lisa] and [Dennis] because the Court's Judgment stated that [Lisa] had only a 'minor marital interest' in [Dennis's] separate farm property and mobile home included thereon, and this Judgment was an error of law and against the weight of the evidence in that the evidence presented at trial supported a substantial increase in the value of the farm directly attributable to the purchase and inclusion of the mobile home thereon which occurred during the marriage and with marital funds."

Lisa begins her argument by asserting the value of the farm when the parties married was $104,000. She bases that hypothesis on Exhibit 6, a "Farm and Home Plan" signed by Dennis dated April 21, 1988, and submitted to "Farm and Home Administration" ("FmHA"). It shows that as of January 1988 (the month after the marriage), the farm was worth $104,000. Lisa also relies on two other "Farm and Home Plan[s]" signed by Dennis and submitted to FmHA, one dated April 18, 1991 (Exhibit V), the other dated May 25, 1993 (Exhibit W). Both show the farm was worth $104,000.

However, on May 28, 1987 (seven months before the marriage), Dennis signed a Farm and Home Plan (Exhibit L) for FmHA showing the farm was worth $168,000. Dennis testified he believed the farm was worth that amount when the parties married. Asked to explain the $104,000 value on Exhibit 6 (referred to in the preceding paragraph), Dennis responded that the FmHA people wanted him to

---

4. The lawyer representing Lisa in this appeal is not the lawyer who represented her in the trial court.

sign it to "make their farm plans to work at the time."

▮ Dennis's credibility and the weight to be given his testimony was a matter for the trial court, which was free to believe none, part, or all of any witness's testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988). An appellate court assumes a trial court believed the testimony consistent with its judgment. *Farm Bureau Town and Country Insurance Co. of Missouri v. Rogers,* 959 S.W.2d 880, 885[3] (Mo.App. S.D.1997).

Neither party asked the trial court for findings on any controverted fact issue. The trial court made no finding as to the value of the farm at the time the parties married. Consequently, this court shall assume the trial court found that issue in accordance with the result reached. Rule 73.01(c), Missouri Rules of Civil Procedure (2000); *Gaar v. Gaar's Inc.,* 994 S.W.2d 612, 616[5] (Mo.App. S.D.1999). As shall appear *infra,* a finding that the farm was worth $168,000 at the time of the marriage is consistent with that result.

The evidence (Exhibit 6, *supra*) showed that as of January 1988—the month after the marriage—Dennis's farm was subject to liens securing indebtedness totalling $153,270. Consequently, assuming the farm was worth $168,000 (the amount in the preceding paragraph) at the time of the marriage, the net value of the farm when Lisa became Dennis's wife was $14,730.

Exhibit 5, *supra,* presented by Lisa, and Exhibit U, *supra,* presented by Dennis, showed the farm was subject to liens securing indebtedness totalling $110,000 at time of trial.[5] It thus appears the indebtedness secured by liens on the farm was reduced by $43,270 during the marriage.

The only reasonable inference from the evidence is that the reduction in indebtedness resulted from the efforts and earnings of both parties. Accordingly, if the farm was still worth $168,000 at time of trial, there was at least a $43,270 marital interest in it.

Lisa maintains the marital interest in the farm exceeds $43,270 because the farm rose in value during the marriage and the increase was attributable in part to the modular house, a marital asset.

▮ In evaluating that argument, this court is mindful that any increase in the value of the farm after the marriage attributable solely to an increase in the value of the *land* is not marital property, as the *land* was owned by Dennis before the marriage. An increase in the value of separate property remains separate property unless marital assets contributed to such increase. § 452.330.2(5), RSMo Cum.Supp. 1998; *Barnes v. Barnes,* 903 S.W.2d 211, 214[9] (Mo.App. W.D.1995).

There was conflicting evidence regarding the fair market value of the farm at time of trial. Dennis's evidence (Exhibit U) showed the fair market value of the farm at that time was still $168,000 (the value when the parties married). Dennis's appraiser (mentioned in footnote 2, *supra*) testified the farm's present fair market value is $167,535 ($465 lower than Dennis's figure). Lisa's evidence (Exhibit 5) showed the fair market value of the farm at time of trial was $195,000. Lisa's appraiser (mentioned in footnote 2, *supra*) testified the farm's present fair market value is $195,000.

Lisa's brief does not direct this court to any evidence establishing the amount (if any) by which the fair market value of the farm increased because of the addition of

---

5. As reported earlier in this opinion, Dennis's Exhibit U showed an "Amount Owed" on the farm of $144,000. However, another part of Exhibit U listed two debts secured by the farm, one being $88,000 and the other being $22,000. Because the total of the latter two figures is $110,000—the amount on Lisa's Exhibit 5—this court shall assume the liens on the farm at time of trial secured indebtedness totalling that amount. As this court comprehends Lisa's brief, she agrees with that figure.

the modular house. This court has studied the report of her appraiser and has espied no such evidence.

■ To have a share of the increase in the value of a spouse's separate real estate declared marital property, the other spouse must prove marital assets or labor contributed to acquiring the increase in value. *Stratman v. Stratman,* 948 S.W.2d 230, 239[21] (Mo.App. W.D.1997). Lisa's evidence failed to meet that requirement in regard to the modular house.

The trial court made no finding as to the fair market value of the farm at time of trial. If the trial court found Dennis's evidence persuasive, the court would have concluded the farm did not increase in value during the marriage.

However, even if the trial court believed the fair market value of the farm increased during the marriage, such belief would not compel a finding that the increase was attributable to the modular house. As reported earlier, there was an "older farm home" on the farm when the parties married. Any increase in the fair market value of the farm attributable to the modular house would have to be calculated by taking into account the value of the farm when the earlier house was there and the value of the farm now that the modular house is there, and reducing the difference by the increase in the value of the *land*—if any—during the marriage.[6] No such calculation appears in the record.

■ The standard governing this court's review is set forth in *T.B.G. v. C.A.G.,* 772 S.W.2d 653 (Mo. banc 1989). The judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 654. A trial court is vested with considerable discretion in dividing marital property; an appellate court will

interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Dardick v. Dardick,* 670 S.W.2d 865, 869[5] (Mo. banc 1984).

The trial court implicitly recognized the "equity" in Dennis's farm had increased during the marriage as a result of contribution of marital assets. As we have seen, the trial court granted Lisa a $20,000 judgment against Dennis, secured by a lien on the farm.

■ An appellate court presumes the trial court's action is correct; the burden is on the appellant to demonstrate error. *Linzenni v. Hoffman,* 937 S.W.2d 723, 725[3] (Mo. banc 1997). Viewing the evidence in the light most favorable to the judgment (as this court must do), *Conley v. Crown Coach Co.,* 348 Mo. 1243, 159 S.W.2d 281, 283[3] (1942), this court holds Lisa has failed to demonstrate the trial court abused its discretion by awarding her a judgment for $20,000 instead of a larger amount to compensate her for her share of the marital interest in Dennis's farm.

This court does not ignore Lisa's argument that no lien was placed on the farm to secure the debt incurred by the parties in buying the modular house. Nonetheless, there was evidence that the parties still owe some $32,000 in unsecured debt attributable to that purchase. The judgment assigned that indebtedness to Dennis.

■ Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the trial court's action, it cannot be said the trial court abused its discretion. *Anglim v. Missouri Pacific Railroad Co.,* 832

---

**6.** Dennis's appraiser testified land prices in the area where the farm is situated had grad-

ually increased during the parties' marriage.

S.W.2d 298, 303[8] (Mo. banc 1992), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). Applying that standard, this court finds no abuse of discretion in the trial court's ruling regarding the farm.

Lisa's second point is denied, and the judgment is affirmed.

PREWITT, J., and BARNEY, C.J., concur.