LaVonne Carol HOLMAN, Respondent,

v.

William Hill HOLMAN, Appellant.

No. 28015.

Missouri Court of Appeals,
Southern District,
Division Two.

July 26, 2007.

James R. Sharp, Springfield, for Appellant.

Donald L. Cupps & Darlene Parrigon, Ellis, Cupps and Cole, P.C., Cassville, for Respondent.

Before GARRISON, J., BARNEY, J., and BATES, C.J.

PER CURIAM.

Appellant William Hill Holman ("Husband") appeals the trial court's judgment dissolving his marriage to Respondent La-Vonne Carol Holman ("Wife"). As discussed below, Husband alleges five points of trial court error, chiefly centered on the trial court's determination that Wife acquired marital interests in the increased value of real property titled solely in Husband's name together with the trial court's division of these marital interests. Husband also challenges the trial court's determination that the antenuptial agreement entered into by the parties was unconscionable and, thus, unenforceable.

 In a dissolution proceeding, this Court must affirm the trial court's decree of dissolution "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *In re Marriage of Thomas,* 199 S.W.3d 847, 851 (Mo.App.2006). "The trial court is given broad discretion in dividing property and we will interfere with its decision only if the division is so unduly weighted in favor of one party that it amounts to an abuse of discretion." *Id.* "Judging credibility and assigning weight to evidence and testimony are matters 'for the trial court, which is free to believe none, part, or all of the testimony of any witnesses.'" *Love v. Love,* 72 S.W.3d 167, 171 (Mo.App.2002) (quoting *In re Marriage of Haugh,* 978 S.W.2d 80, 82 (Mo. App.1998)). "We review the evidence and

inferences in the light most favorable to the trial court's decision and disregard all contrary evidence and inferences." *Thomas,* 199 S.W.3d at 851.

Viewing the record in the light most favorable to the trial court's judgment, *Kirkwood v. Kirkwood,* 77 S.W.3d 675, 680 (Mo.App.2002), the record reveals the parties were married on October 20, 1991, and separated on November 4, 2004. There were no children born of the marriage. Before marrying, the parties executed an antenuptial agreement ("the Agreement").[1]

Wife testified at trial that prior to the parties' marriage she owned a home in Rogers, Arkansas, which she sold for $75,000.00 when she moved in with Husband. Before their wedding, Wife gave Husband $20,000.00 "to pay for half of the home that [they] bought" together in Cassville, Missouri. Husband also contributed money toward the purchase of this home ("the Cassville house"). When the Cassville house was purchased, it was titled jointly and the home loan was signed by both parties. The parties later sold the Cassville house for $45,000.00.

At the time of the parties' marriage, Husband owned a house ("the Farmhouse") on thirty acres, but was not living at that location because his ex-wife resided there. When Husband's former wife vacated the Farmhouse in May of 1992, Husband and Wife began remodeling it. A portion of the proceeds from the sale of the Cassville house were used by the parties to remodel the Farmhouse. Wife testified that when she and Husband took possession of the Farmhouse it "wasn't livable" and they "gutted it." Wife testified the parties spent $90,000.00 remodeling the Farmhouse. She stated the parties took out a loan for the remodeling, the

---

1. The Agreement, in part, provided that the parties' separate property would remain separate after marriage and only jointly titled

property could be considered as marital property.

amount of which is not clearly revealed by the record. Wife testified without objection that the Farmhouse was valued at $54,640.00 when the parties began remodeling it shortly after Husband's ex-wife vacated the home. Wife also stated that after the remodeling, the Farmhouse was appraised at the time of trial for $185,000.00, and she valued the marital interest in the Farmhouse at $130,360.00, being the difference in the value of $54,640.00 prior to remodeling and the value of $185,000.00 after remodeling.

█ Wife also testified the parties borrowed $75,000.00 to construct a commercial building ("the Commercial Building") on real property ("the Commercial Property") Husband inherited during the course of the marriage when his father passed away in 1997. According to Wife, Husband made all of the payments on the loan for the Commercial Building out of their joint account.[2] She testified without objection that at the time Husband inherited the Commercial Property the value of the "bare land" was $30,000.00. Wife also testified the parties spent $62,000.00 on the Commercial Building together with $5,600.00 constructing a parking lot adjacent to it. She stated the parties received rental income from the Commercial Building and that she opened a business in the newly constructed Commercial Building. Wife also related she purchased fixtures for her business with $15,000.00 of her own money and the fixtures were then sold with the business. Wife also testified she placed the money she received from selling the business into her separate account to pay for her "living expenses" and "personal needs."

Wife also stated the Commercial Building and Commercial Property were appraised shortly before trial at $127,000.00. Wife opined that the value of the marital interest in the Commercial Building and Commercial Property was $97,000.00, that is $127,000.00 for the Commercial Property plus the Commercial Building minus $30,000.00 for the "bare land" inherited by Husband.

The record also reveals that during the marriage the parties constructed a rental house ("the Rental House") for Wife's disabled son on the real property where the Farmhouse was located. Wife testified her son contributed $15,000.00 toward the construction of the Rental House. She also related the property was appraised prior to trial at $66,000.00 and she believed the parties invested approximately $74,677.00 in the building of the Rental House. To build the Rental House, the parties took out a loan and Husband used the rental payments collected on the Rental House to make payments on the loan.

In his testimony, Husband related the parties purchased the Cassville house prior to their marriage for $40,000.00 and Wife contributed $20,000.00 to that purchase. He stated they owed $20,000.00 on the

2. The record shows that during the marriage the parties had a joint checking account which had originally been Husband's account before the marriage. Wife and Husband both wrote checks and paid various household expenses including farm bills out of this joint account. Husband testified that during the course of the marriage he deposited money into this account from his earnings together with income derived from the sale of cattle and from business interests.

As a general rule, "[i]ncome earned during the marriage from separate property is marital property, including rental income." *Selby v. Selby*, 149 S.W.3d 472, 485 (Mo.App.2004); *see Kauffman v. Kauffman*, 101 S.W.3d 35, 45 (Mo.App.2003). In this appeal Husband does not specifically challenge the trial court's findings relating to the marital nature of the joint checking account despite his repeated assertions in his appellate brief that he made various loan payments out of his "separate" account.

Cassville house when it sold. He took the $20,000.00 remaining from the sale of the Cassville house and "got a check that was made out to both of [them], and [he] asked her what she wanted to do with it. She said for [him] to keep it, and [he] deposited it in [his] account." When the parties started to remodel the Farmhouse in 1993, they used that money in the remodeling process. He stated Wife never contributed any of her separate funds toward the remodeling of the Farmhouse and never made any payments on the Farmhouse loan from her own bank account.

Husband also testified he gave Wife money to start her business in the newly constructed Commercial Building because, "[h]er money was tied up in CDs" and "when the CD matured she repaid [him]." He stated he paid for some of the fixtures for Wife's business "[i]n the beginning, but she repaid [him]" and she placed the profits from her business in her bank account. He also related he made all of the loan payments on the Commercial Building loan out of the previously mentioned joint bank account.

Husband testified that Wife's son paid $450.00 a month in rent to live in the Rental House and he "put [the money] in [the joint] account" to make payments on the loan.

Husband also stated he never placed Wife's name on any of the deeds to the real properties at issue "[b]ecause of the [Agreement], and [he] just wanted to maintain [his] assets for [his] children." He stated Wife should receive "what the [Agreement] designates she should get."

A portion of Husband's deposition was read into the record at trial. Husband testified that Wife did not "directly" contribute money to the renovation of the Farmhouse but she "transferred" money to him which went toward the remodeling. He stated he borrowed $80,000.00 from Commerce Bank to improve the Farm-house and that both he and Wife expended physical efforts in the improvement of the Farmhouse. He stated the Rental House cost approximately $70,000.00 to build and Wife's son contributed $15,000.00 or $20,000.00 to the project.

At the close of all the evidence, the trial court found the Agreement to be unconscionable; found Wife had acquired a marital interest "in real property titled in [Husband's] name;" found Wife's nonmarital property to be valued at $89,223.00 and valued Husband's nonmarital property at $624,799.00; and found there was an unequal division of marital property, such that Wife was entitled to a judgment against Husband in the amount of $203,832.67 to equalize the distribution of marital property. This appeal by Husband followed.

For ease of analysis we commence our analysis of Husband's points relied on with Husband's third point.

In his third point of trial court error Husband maintains the trial court erred in invalidating the Agreement and finding it to be unconscionable because such a finding was not based on substantial evidence and the trial court misapplied the law. On the other hand, while Wife acknowledges that the trial court correctly found the Agreement executed by the parties to be "unconscionable," she, nevertheless, maintains the trial court abused its discretion in permitting Husband to introduce and receive the Agreement in evidence because Husband failed to plead his intent to rely on the Agreement so as "to avoid the designation of property as marital property."

■ Wife raises no separate appeal relating to the trial court's consideration of the Agreement. Nevertheless, she is entitled to make the aforementioned argument in her respondent's brief. "Generally, in the absence of a cross-appeal, the respon-

dent cannot complain of an adverse ruling by the trial court." *Martin v. Fulton Iron Works Co.*, 640 S.W.2d 491, 495 (Mo.App. 1982). "However, if otherwise validly presented, a respondent may attack the erroneous rulings of the trial court for the purpose of sustaining a judgment in its favor." *Id.*; *see Brockman v. Regency Fin. Corp.*, 124 S.W.3d 43, 50 (Mo.App. 2004) (holding that "[a] respondent may attack the erroneous rulings of the trial court in order to sustain a judgment in its favor"). Here, Wife, as the prevailing party below, "is entitled to advance any argument ... in support of the judgment." *Coldwell Banker Residential Real Estate Serv., Inc. v. Missouri Real Estate Comm'n*, 712 S.W.2d 666, 668 n. 1 (Mo. banc 1986).

■ In the present matter Wife asserted in her petition for dissolution that the "parties have real property and personal property which is marital property...." In his answer to her petition, Husband offered a general denial to Wife's allegations and "pray[ed] for an order ... awarding to each party martial [sic] items in a just and reasonable manner...." In his counter-petition for dissolution of marriage, Husband set out that "the parties have marital property for the Court to set aside and divide."

At trial, when Husband's attorney offered a copy of the Agreement into evidence, counsel for Wife objected that the Agreement was "beyond the scope of the pleadings." Thereafter, the trial court ruled the Agreement was admissible; entered it into evidence; and overruled Wife's objection.

■ Rule 55.08 sets out:

In pleading to a preceding pleading, a party shall set forth all applicable affirmative defenses and avoidances.... A pleading that sets forth an affirmative defense or avoidance shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance.[3]

"An affirmative defense is waived if the party raising it does not plead it." *In re Estate of Kilbourn*, 898 S.W.2d 583, 586 (Mo.App.1995).

■ Based on the foregoing, we determine the trial court abused its discretion in permitting Husband to introduce the Agreement at trial because Husband failed to assert the Agreement as an affirmative defense in his pleadings. It has long been held that "[m]atters seeking avoidance of a valid contract are affirmative defenses and must be set out in the pleadings." *Id.* The terms of the Agreement clearly provide " 'additional facts [other than the statutory considerations of section 452.300] that permit [Husband] to avoid the legal responsibility alleged' " by Wife, i.e., that there was marital property to be divided. *Smith v. Thomas*, 210 S.W.3d 241, 244 (Mo.App.2006) (quoting *Mobley v. Baker*, 72 S.W.3d 251, 257–58 (Mo.App.2002)). A party that fails to raise an affirmative defense in his pleadings, waives that issue at trial. *In re Estate of Kilbourn*, 898 S.W.2d at 586. Point Three is denied.

We now turn to Husband's first and second points on appeal. They are in-

---

**3.** Section 452.300.1 provides that "the Supreme Court rules apply to all to proceedings under §§ 452.300 to 452.415, statutes pertaining to dissolution of marriage." *Weber v. Weber*, 908 S.W.2d 356, 358 (Mo. banc 1995). "Section 452.300.3 requires that the initial pleading seeking dissolution of marriage be a petition and that all other pleadings filed in dissolution of marriage proceedings be as are provided pursuant to the rules of civil procedure." *Id.*

All rule references are to Missouri Court Rules (2006) and all statutory references are to RSMo 2000.

terrelated and we shall discuss them together.

In his first point relied on Husband asserts the trial court erred in finding "that any part of the value of Husband's [nonmarital] [C]ommercial [B]uilding and [Commercial Property] were marital in nature...." He maintains the Commercial Property and Commercial Building should have been deemed separate property because the Commercial Property was inherited by Husband from his father; all of the funds used to improve the Commercial Property and construct the Commercial Building "came from Husband's separate funds;" and "[w]hile Wife did invest $15,000.00 in buying fixtures for her business that was located in the [C]ommercial [B]uilding, she recovered these funds when she later sold the fixtures along with her business."

In his second point on appeal, Husband asserts the trial court erred in finding that the value of the Commercial Property and Commercial Building, set in at $97,000.00 by the trial court, was marital property. He maintains such a finding by the trial court was in error because the Commercial Property was inherited by him and never titled in Wife's name; the value of the Commercial Property at the time of his inheritance was $62,000.00; and the fair market value of the property after the construction of the Commercial Building was $127,000.00, which was only an increase in value of $65,000.00.

Husband also maintains, as previously set out, that Wife's contribution to the construction of the Commercial Building was, if anything, only $15,000.00, "while the remaining cost was financed by a $75,000.00 loan paid exclusively from the rental income from the property, and therefore under the "source of funds rule" the marital portion of the $65,000.00 increase in value ... was only 16.7 [percent] of the increase or $10,855.00."

"The circuit court has broad discretion in classifying and dividing marital property." *Moore v. Moore*, 189 S.W.3d 627, 632 (Mo.App.2006). "We must presume the court's division of property is correct, and the party challenging the division has the burden of overcoming the presumption." *Id.* "Generally, any property acquired by a spouse prior to marriage is that spouse's separate property upon dissolution of the marriage." *Alexander v. Alexander*, 956 S.W.2d 957, 960 (Mo.App. 1997). "However, any 'increase in the value of separate property can constitute marital property if marital assets or labor contributed to acquiring that increase.'" *Id.* (quoting *Meservey v. Meservey*, 841 S.W.2d 240, 245 (Mo.App.1992)). "The marital share of the increase in value is proportionate to the amount of marital funds or effort devoted to its acquisition." *Id.* "The marital contribution includes any marital assets which were applied toward the purchase or improvement of the property in question." *Id.* Additionally, we observe that "[a]ll property acquired by either party during the marriage is presumed to be marital property." [4] *Id.*

---

4. Section 452.330.2, RSMo 2000, sets out that

[f]or purposes of sections 452.300 to 452.415 only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:
(1) Property acquired by gift, bequest, devise, or descent;
(2) Property acquired in exchange for property acquired prior to the marriage or in

exchange for property acquired by gift, bequest, devise, or descent;
(3) Property acquired by a spouse after a decree of legal separation;
(4) Property excluded by valid written agreement of the parties; and
(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, *unless marital assets including labor, have*

However, the foregoing principles must be tempered by the application of the "source of funds" rule. "In determining if property is marital or separate, courts follow the 'source of funds rule.'" *McAllister v. McAllister*, 101 S.W.3d 287, 293 (Mo.App. 2003); *see Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825 (Mo. banc 1984). As explained in *In re Marriage of Herr*, 705 S.W.2d 619, 623–24 (Mo.App.1986):

> under the source of funds rule, when property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital and its value is subject to equitable distribution. Thus the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportional and fair return on their investment.[5]

*Herr*, 705 S.W.2d at 625, set forth the formula to be used as:

$$\text{nonmarital property} = \frac{\text{nonmarital contribution}}{\text{total contribution}} \times \text{equity}$$

$$\text{marital property} = \frac{\text{marital contribution}}{\text{total contribution}} \times \text{equity}$$

■■■ Returning to the instant case, both parties agree the real property upon which the Commercial Building was constructed was inherited by Husband from his father and, as such, is clearly Husband's separate property. At issue is the *increase in value* to the Commercial Property and how that increase should be distributed. In this connection, we observe that "[t]he source of funds rule does not cause the entire increase in value of separate property accruing during a marriage to be marital property irrespective of the source of that increase." *Id.* at 622.

Wife acknowledges the correctness of Husband's assertions that, given the circumstances of this case, the mere fact that the loan for the construction of the Commercial Building was taken out in both of their names does not instantly convert it to marital property. Rather, Wife's assertion is that it is not the loan which created a marital interest but "the construction and payment of the loan with income generated during the marriage which established a marital interest in the property." In this connection she is correct. As previously related, "[a]ny increase in the value of separate property is marital property if marital assets or marital labor contributed to acquiring that increase." *Selby v. Selby*, 149 S.W.3d 472, 484 (Mo.App.2004). "The marital contribution includes any marital assets which were applied toward the purchase or improvement of the property in question." *Alexander*, 956 S.W.2d at 960.

■■■ Wife testified the Commercial Property upon which the Commercial Building was constructed was worth $30,000.00 at the time it was inherited by Husband in 1997 when Husband's father died; that the parties took out a $75,000.00 loan to construct the Commercial Building; and the entirety of the Commercial Building and Commercial Property was valued prior to trial at $127,000.00. She testified the loan was paid from the rental income

---

> *contributed to such increases and then only to the extent of such contributions.*
> (Emphasis added.)

**5.** The "'enhancement in the value of a spouse's separate property which is caused by appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control is not jointly acquired property unless the non-owning spouse can prove that his/her contributions were also a causal factor.'" *Brooks v. Brooks*, 911 S.W.2d 631, 633 (Mo.App.1995) (quoting *Herr*, 705 S.W.2d at 622).

received from the lease of space in the Commercial Building, including rental income paid by her for leasing space for her own business. It is clear that the trial court accepted the evidence tendered by Wife relating to the Commercial Building and Commercial Property. "An appellate court assumes a trial court believed the testimony consistent with its judgment." *In re Marriage of Heirigs*, 34 S.W.3d 835, 841 (Mo.App.2000).

■■■ While the trial court was correct in its determination that the value of the "bare land" of the Commercial Property at the time of inheritance by Husband was $30,000.00 and that the undisputed value of the Commercial Property and Commercial

Building at the time of trial was $127,000.00, it erred in its determination that the value of the "marital portion" subject to division between the parties was $97,000.00. This is because "a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property." *Brooks,* 911 S.W.2d at 633.

Applying the formula set out in *Brooks,* 911 S.W.2d at 633, and *Herr,* 705 S.W.2d at 625, we make the following calculations in determining the correct value of Husband's "nonmarital property" and the value of the "marital property" pursuant to the source of funds rule, as follows:

$$\text{nonmarital property} = \frac{\$30,000 \text{ (nonmarital)}}{\$30,000 + \$75,000 \text{ (marital)} = \$105,000 \text{ (total)}} \times \$127,000 \text{ equity}$$

$$\text{marital property} = \frac{\$75,000 \text{ (marital)}}{\$30,000 \text{ (nonmarital)} + \$75,000 = \$105,000 \text{ (total)}} \times \$127,000 \text{ equity}$$

Accordingly, the ratio of the nonmarital investment by Husband to the total nonmarital and marital investment in the property yields 28.57142% of the equity, hence the value of Husband's nonmarital interest in the property is $36,285.70 (28.57142% × $127,000.00). Thus, the value of the marital interest in the property is $90,714.30 (71.42858% × $127,000.00). Therefore, the trial court's judgment must be amended to reflect an increase in the value of Husband's nonmarital property from $18,000.00 to $36,285.70 and a concomitant reduction in the value of Wife's share of the marital property subject to division. Point One is denied. Point Two has merit, in part.

■■■ In his fourth point relied on, Husband essentially states the trial court erred in finding the marital portion of the Farmhouse was $130,360.00. Husband presented evidence showing the fair market value of the Farmhouse was $95,000.00

and that the parties spent about $80,000.00 on the remodeling. He maintains "Wife's maximum contribution to the remodeling of the [Farmhouse] was $20,000.00 and therefore the marital portion of the increase in value of [the Farmhouse] using the source of funds rule was 22.2 [percent] ... or $19,980.00."

As previously related, Wife testified that shortly after Husband's ex-wife vacated "the home", i.e., the Farmhouse, it was valued at $54,640.00 and the fair market value of the Farmhouse at the time of trial was $185,000.00. Wife testified the parties spent about $90,000.00 remodeling the Farmhouse. Both parties agreed they each expended time and labor in the remodeling process in addition to the aforementioned sums of money.

It is clear that in the instant matter the increase in value to the Farmhouse resulted *in part* from the expenditure of marital assets. Wife was entitled to a marital

interest in that increased value. *Heirigs,* 34 S.W.3d at 840. As with the increase in the value of the Commercial Property upon which the Commercial Building was constructed, the parties took out a loan together to remodel the Farmhouse, and all of the payments on that loan were made during the marriage from their joint checking account into which funds earned by marital, rental income and marital earnings had been placed. Additionally, while neither spouse was specific as to the extent of each party's individual labor on the Farmhouse, there was testimony that Wife as well as Husband expended their respective labor in the remodeling process.

In its division of property, the trial court found the Farmhouse was Husband's separate property; that his "nonmarital portion" of the property was valued at $54,640.00; and that the fair market value of the property was $185,000.00. Again, we determine the trial court's " 'valuation of property is within the range of conflicting evidence of value offered at trial ... ,' " *Tarneja v. Tarneja,* 164 S.W.3d 555, 559 (Mo.App.2005) (quoting *Taylor v. Taylor,* 25 S.W.3d 634, 644 (Mo.App.2000)), and " '[t]he trial court is entitled to believe or disbelieve the testimony of either party concerning the valuation of marital property in a dissolution proceeding. ... ' " *Tarneja,* 164 S.W.3d at 559 (quoting *Wofford v. Wofford,* 991 S.W.2d 194, 200 (Mo.App. 1999)). It is clear that the trial court adopted the figures tendered by Wife. There was sufficient and substantial evidence supporting the trial court's determination that Wife is entitled to a marital share in the increased value of the Farmhouse. *Heirigs,* 34 S.W.3d at 840.

However, we disagree with the trial court's determination that the value of the "marital portion" of the Farmhouse is $130,360.00. Once more applying the source of funds formula, we make the following calculations, to-wit:

$$\text{nonmarital property} = \frac{\$54{,}640 \text{ (nonmarital)}}{\$54{,}640 + \$90{,}000 \text{ (marital)} = \$144{,}640 \text{ (total)}} \times \$185{,}000 \text{ equity}$$

$$\text{marital property} = \frac{\$90{,}000 \text{ (marital)}}{\$54{,}640 \text{ (nonmarital)} + \$90{,}000 = \$144{,}640 \text{ (total)}} \times \$185{,}000 \text{ equity}$$

Accordingly, the ratio of the nonmarital investment by Husband to the total of the nonmarital and marital investment in the property yields $69,886.60 (37.77654% × $185,000.00), and the value of the marital interest in the property is $115,113.38 (62.22345% × $185,000.00). Therefore, the trial court's judgment must be amended to reflect an increase in the value of Husband's nonmarital property from $54,640.00 to $69,886.60, and a concomitant reduction in the value of Wife's share of the marital property subject to division. Point Four has merit, in part.

■■■ Husband's fifth point relied on asserts the trial court erred in finding the Rental House was marital property because, it "was built during the marriage on property that Husband inherited from his father;" the Rental House "was never titled in Wife's name;" and the construction "was financed by a loan taken out in both Husband and Wife's names but which was paid by Husband's separate funds or the rental proceeds from said house, and not by any funds of Wife or marital funds."

"There are many cases where only one spouse's name appears on the title but the other spouse has an interest." *Selby,* 149 S.W.3d at 486. Here, Wife testified the parties invested $74,677.00 of their marital funds constructing the Rental House and the Rental House was appraised prior to trial at $66,000.00. The parties took out a

loan in both of their names to finance the construction of the Rental House. Wife testified the loan for the construction of the Rental House was repaid using marital, rental income generated by the Rental House. Husband also testified they used the rental income to pay the loan on the Rental House as well as other funds. He stated the Rental House cost $70,000.00 to build. Both parties agree that Wife's son contributed $15,000.00 to $20,000.00 toward the construction of the Rental House.

The trial court found the value of the Rental House, exclusive of the real property, constituted marital property and valued the Rental House at $66,000.00. As previously related, "[a]ny increase in the value of separate property is marital property if marital assets or marital labor contributed to acquiring that increase." *Selby*, 149 S.W.3d at 484. "The marital contribution includes any marital assets which were applied toward the purchase or improvement of the property in question." *Alexander*, 956 S.W.2d at 960. "Income earned during the marriage from separate property is marital property, including rental income." *Selby*, 149 S.W.3d at 485; *see Kauffman*, 101 S.W.3d at 45. The trial court did not err in finding the increase in the value of Husband's separate property, consisting of the Rental House, was marital property, subject to equitable division by the trial court. There is substantial evidence to support the trial court's judgment. Point Five is denied.

"The duty of this [C]ourt is declared by Supreme Court Rule 84.14. 'Unless justice otherwise requires, the court shall dispose finally of the case.'" *Herr*, 705 S.W.2d at 621 (quoting Rule 84.14, Missouri Court Rules 2006). Accordingly, the judgment of the trial court is modified, pursuant to Rule 84.14, as follows: per the terms of the judgment, the value of Husband's nonmarital property interest in the Commercial Property and Commercial Building is increased from $18,000.00 to $36,285.70; the value of Husband's nonmarital property interest in the Farmhouse is increased from $54,640.00 to $69,886.60; the total value of the marital property subject to distribution is decreased from $628,683.39 to $595,151.09; and that part of the judgment awarding Wife monies to equalize the distribution of marital property and marital debt is decreased from $203,832.67 to $170,300.37. All other terms of the judgment are modified to conform to the foregoing. As so modified, the judgment of the trial court is affirmed.