Marni Beth LICHTENFELD,
Petitioner/Respondent

v.

Mark Alan LICHTENFELD,
Respondent/Appellant.

No. ED 98742.

Missouri Court of Appeals,
Eastern District,
Division One.

June 25, 2013.

Application for Transfer to Supreme
Court Denied July 31, 2013.

Alan E. Freed, St. Louis, MO, for appellant.

Michael Gross, St. Louis, MO, for respondent.

## OPINION

CLIFFORD H. AHRENS, Presiding Judge.

Mark Lichtenfeld (Husband) appeals the trial court's dissolution judgment in various respects relating to the characterization and division of property awarded to his former spouse, Marni Lichtenfeld (Wife). We reverse and remand as to Husband's points I.A, IV, and V, discussed below. With respect to Husband's remaining points, we affirm the trial court's judgment pursuant to Rule 84.16(b).

## Background

Husband and Wife married in 1996. Prior to their wedding, they entered into a prenuptial agreement that defined separate and marital property and directed that, in the event of divorce, the latter would be divided equally. The couple had three children during the marriage. Throughout the marriage, Husband controlled the family finances and took great care not to commingle funds so as to maintain their separate character under the prenuptial agreement. He also kept detailed records tracing all cash flow.

Wife filed for divorce in 2009. As a threshold matter, the parties litigated the validity of the prenuptial agreement, and the trial court upheld it. Then proceeding to the dissolution, as pertinent here, both parties presented extensive evidence and expert testimony regarding the origination and characterization of marital and nonmarital assets. In view of that evidence, the court identified the marital property subject to distribution and divided it equally as contemplated by the prenuptial agreement. Husband appeals the court's judgment as it relates to five specific monetary allocations. Additional facts are provided below as relevant to each point.

## Standard of Review

In a dissolution proceeding, this Court must affirm the trial court's decree of dissolution "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or un-

less it erroneously declares or applies the law." *In re Marriage of Thomas,* 199 S.W.3d 847, 851 (Mo.App. S.D.2006); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "The trial court is given broad discretion in dividing property and we will interfere with its decision only if the division is so unduly weighted in favor of one party that it amounts to an abuse of discretion." *Id.* The trial court abuses its discretion when its ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Kester v. Kester,* 108 S.W.3d 213, 218 (Mo.App. S.D. 2003).

"Judging credibility and assigning weight to evidence and testimony are matters 'for the trial court, which is free to believe none, part, or all of the testimony of any witness.'" *Love v. Love,* 72 S.W.3d 167, 171 (Mo.App. S.D.2002) (quoting *In re Marriage of Haugh,* 978 S.W.2d 80, 82 (Mo.App. S.D.1998)). "We review the evidence and inferences in the light most favorable to the trial court's decision and disregard all contrary evidence and inferences." *Thomas,* 199 S.W.3d at 851. "An appellate court assumes a trial court believed the testimony consistent with its judgment." *In re Marriage of Heirigs,* 34 S.W.3d 835, 841 (Mo.App. S.D.2000).

### Discussion

I.A.  *Attribution of home sale proceeds to Husband*

First, Husband asserts that the trial court erred in offsetting against Husband's share of the marital estate $95,000 received from the sale of the couple's previous ·residence in 2004. Neither party included this figure in their respective financial statements filed with the court in 2011. Rather, the court inquired about these proceeds during the examination of Wife's forensic accountant. To summarize, when the house was sold in 2004, a check payable to Husband and Wife jointly was deposited into a joint account, and then the funds were transferred into Husband's separate account. Husband testified that the transfer was a bank error, which he corrected by calling the bank. The record contains a letter from the bank to Husband apologizing for the error, and the funds were restored to the joint account. Husband further testified that the money was used for marital expenses such as tuition, vacation, gifts, living expenses, and home improvements. Wife did not dispute his description, and her own expert testified that, "based on [his] understanding based on discussions with Mrs. Lichtenfeld," the proceeds were "used for improvements" to the couple's subsequent residence.

The trial court's analysis on this issue was as follows:

> There is one area where the court, however, based on the credible evidence, does not follow Husband's line of thinking, and that is in the area of the use of and disposition of the marital portion of the proceeds from the sale of the Clayton Road house. The parties testified in different manners as to how this was used. Husband attempts to suggest that Wife was very much in agreement with and in fact she used a portion of this money. That may be true, but it is inescapable that, if Husband controlled the financial resources as tightly as is evidenced by his intricate detail of tracing, then it was he and not Wife who determined how to use the money. Further, it is equitable to assess this amount as marital if one uses Husband's logic of how these proceeds were expended.

In essence, although the trial court accepted that the funds were spent on marital expenses, it still charged them against Husband, not due to any wrongdoing, but simply because he controlled the money.

Husband asserts that the trial court erred in including the $95,000 in the calculation and division of marital assets because the money had been spent long before these proceedings and was no longer part of the estate, and there was no evidence that Husband concealed or squandered it. Wife responds that the court's award reflected a credibility determination against Husband on this particular issue and, as such, is immune to appellate review. Missouri law supports Husband's position.

■■ "Generally, the trial court cannot value and include in its division of marital property an asset that does not exist at the time of trial." *Fitzwater v. Fitzwater*, 151 S.W.3d 135, 137 (Mo.App. W.D.2004). Exceptionally, however, "where a spouse is found to have secreted or squandered marital assets in anticipation of the marriage being dissolved ... the court may charge the offending spouse with the value" of such assets. *Id.* Once an accusation is raised, the burden of production rests on the alleged wrongdoer to account for the assets in question, but ultimately the burden of proof and persuasion rests on the accusing spouse. *Id.*

In *Fitzwater*, as here, the trial court factored into the marital estate and charged against the husband sale proceeds that were spent years before the dissolution proceedings. The husband claimed that the majority was used to pay marital debts and living expenses. The wife disagreed but did not raise an allegation of squandering before the trial court. Rather, she raised it for the first time on appeal and argued simply that the trial court could have disbelieved the husband's ac-

counting. Despite the issue being unpreserved, the appellate court considered whether the record would support a finding of squandering and found no such evidence. Thus, it held, absent proof of squandering invoking the exception to the general rule, the trial court erred in including the subject proceeds in the marital estate. See also *Petties v. Petties*, 129 S.W.3d 901 (Mo.App. W.D.2004) (similarly holding that proceeds from sale of real property could not be included in division of marital property where funds no longer existed at time of trial and record lacked any suggestion of squandering).

Likewise here, Wife does not allege that Husband squandered or concealed the $95,000, and the record is devoid of evidence that he did. The undisputed facts in the record reveal that the money was spent on marital expenses several years before Wife filed for divorce. The trial court erred in including those sale proceeds in its calculation and division of property. Point I.A is granted.

## IV. *Amended distribution*

■ For his fourth point, Husband maintains that the trial court erred when it amended its original judgment and redistributed the marital assets unequally in contravention of the prenuptial agreement. Early in the proceedings, the parties entered into a consent order *pendente lite* (PDL) establishing certain temporary arrangements pending final judgment. Under the PDL, Husband agreed to pay Wife $100,000 from his separate funds as an advance for her moving and living expenses pending trial. The order further directed that, if the parties' prenuptial agreement was upheld, then the entire payment "dollar for dollar" would be subtracted from Wife's share of the marital assets. As mentioned *supra,* the trial court did indeed find the agreement valid

and enforceable. Accordingly, in its final judgment, it attempted to divide the marital estate "into approximately equal shares." However, the court mistakenly included Wife's advance in the marital estate rather than subtracting it from her share as per the PDL, thus essentially awarding Wife and charging Husband another $50,000.

Husband filed a post-trial motion alerting the court to its oversight, and the court issued an amended judgment to correct it. Specifically, the court removed the entire $100,000 from the marital basket and subtracted that amount from Wife's distribution. However, in light of that adjustment, the court was "no longer of the belief that the approximate equal division is equitable," so it only reduced Husband's equalization payment to Wife by $22,093. Husband contends that the amended division of property contravenes the prenuptial agreement.

Wife concedes that the court's amended judgment ignores the agreement. Citing the court's rationale that "equal isn't equitable," Wife urges us to infer that the court simply abandoned its earlier determination upholding the agreement. She submits that the court implicitly vacated its judgment of validity and thereby freed itself to divide the property as it deemed fit, as if no agreement existed.

It is not for this court to take such an inferential leap. The trial court's first judgment upholding the agreement reflects its careful application of the law to the evidence on the issue of conscionability. In that judgment, the court specifically noted that the agreement was heavily negotiated with the assistance of independent counsel. Importantly here, the court specifically rejected Wife's argument that the imbalance of assets rendered the agreement unconscionable, reasoning that such imbalance "is precisely the germination of such prenuptial agreements." La-

ter, in its original final judgment, the court confirmed its intent to enforce the agreement. We cannot conceive that the trial court meant to reverse itself and incidentally eviscerate such a central and determinative element of the case on a post-trial motion. Whatever the court's view of the equities now, it found the agreement enforceable in spite of that imbalance. Neither party challenges the validity of the agreement here, so we are bound by its intent. *Kester*, 108 S.W.3d at 220. Accordingly, the trial court must render judgment consistent with the prenuptial agreement. Point granted.

## V. *Characterization of Husband's car as marital property*

■ Finally, Husband asserts that the trial court erred by including his personal vehicle in the marital estate. Husband purchased the vehicle during the marriage but with separate funds. Under the prenuptial agreement, such property is deemed separate property. At trial, Husband presented evidence tracing the purchase to a separate account with Wells Fargo. Husband further traced that account to a predecessor account with the financial institution Strong Funds, which was acquired by Wells Fargo in 2005. The original Strong Funds account was listed as Husband's separate property in the appendix to the prenuptial agreement. The account numbers are identical except that the successor number contains an additional digit at the end. In short, the record reflects that Husband took care to purchase his car with separate funds that remained separate throughout the marriage.

Nevertheless, the trial court included the vehicle in the marital estate for equal division. In defending the court's judgment, Wife emphasizes the extra digit and suggests that such a discrepancy left the court free to disbelieve Husband's evidence entirely. In essence, Wife urges us

to infer a credibility determination that the trial court did not articulate. To the extent the trial court commented at all about Husband's credibility, it only remarked that Husband was meticulous in his record-keeping and deliberate in his management of the family's finances so as to insulate his separate property. We fail to see how this evidentiary record and the court's own perceptions support a finding that Husband's car was marital property. Point granted.

### Conclusion

The court's judgment is reversed and remanded to re-characterize the aforementioned assets in a manner consistent with this opinion and re-distribute the remaining marital estate accordingly.[1],[2] With respect to Husband's remaining points, the trial court's judgment is affirmed in a separate memorandum under Rule 84.16(b).

SHERRI B. SULLIVAN, and GLENN A. NORTON, JJ., concur.

1. The trial court retains authority to modify other awards affected by this opinion.

2. Husband's motion to supplement the legal file, which Wife opposes, is denied.